MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. A. J. OSLIN.

Decided May 11, 1901.

**1.—Railway Company—Signals at Crossing—Sounding Whistle Again.**

Where the whistle has been sounded eighty rods in advance of a crossing, as required by the statute, the failure to again sound it nearer the crossing will not be negligence as matter of law; but where conditions exist which render the sounding of the whistle at the statutory distance insufficient to convey adequate warning to persons at the crossing, as where there is a large yard and many tracks and cars there, adequate additional warning should be given, and if an ordinarily prudent person under the circumstances would have again sounded the whistle, a failure to do so would be negligence.

**2.—Contributory Negligence—Looking and Listening.**

Where parties approaching a crossing, and while near it, looked and listened for the train, it can not be said, as matter of law, that it was contributory negligence for them not to look down the track after they reached the point where the view was entirely unobstructed, or for them to look only far enough down it to see a train which, if coming at a proper rate of speed, might reach them before they could cross.

**3.—Same—Excitement of Danger.**

Nor will it be held contributory negligence as matter of law that a person, after getting on the track in front of an engine, attempted to turn back instead of crossing, or after crossing and because of mistake as to which track the engine was on, attempted to recross the track.

**4.—Same—Charge.**

A charge that if plaintiff's wife started to recross the track as the engine approached her, and in so doing failed to use proper care, and this helped to cause her injury, the jury should find for the defendant, is not erroneous, even if her turning back of necessity contributed to the accident, since the court is not bound to instruct as to inferences of fact necessarily arising from the proof of other facts, but may submit the same to the jury.

**5.—Same—Degree of Care—Knowledge of Risks.**

A requested charge which required the injured person in crossing the railroad at a public crossing to exercise a degree of care proportioned to the risk, and not that degree of care proportioned to the risk that an ordinarily prudent person would have exercised under like conditions, was properly refused; as also a charge which required her to exercise a degree of care proportioned to the risks actually existing, without reference to whether she knew or ought to have known of them.

**6.—Same—Question for Jury.**

Whether or not a crossing is especially dangerous, and what facts will make it more so, are proper questions for the jury.

**7.—Evidence Not Too Remote.**

Testimony that the next morning after an accident cars were standing on the side track so as to obstruct the view near where the injury occurred, is admissible to prove that they were there at the time of the injury.

**8.—Same—Res Gestae—Nervous Injury.**

Where there was uncontradicted evidence that plaintiff's wife suffered a very severe nervous shock by reason of her injuries, it was admissible to show that she jumped and trembled at slight noises, and claimed that her eyes were dancing in her head when there was nothing the matter with them.

Appeal from Grayson. Tried below before Hon. Don A. Bliss.

*T. S. Miller* and *Head & Dillard,* for appellant.

*Hazlewood & Smith,* for appellee.

TEMPLETON, Associate Justice.—On the night of February 14, 1900, Mrs. Mary E. Oslin, wife of the appellee, A. J. Oslin, was struck and injured by an engine of appellant, the Missouri, Kansas & Texas Railway Company of Texas, at a point in the city of Denison where the track of the company crosses Myrick Avenue, one of the principal thoroughfares of the city. Appellee brought this suit against appellant to recover damages on account of his wife's injuries, and obtained judgment for $13,000. The company has appealed.

Myrick avenue runs north and south, and four tracks of the railway company cross it at right angles. The yards of the company are situated about one-fourth of a mile east of the crossing, and the engine, with a caboose attached, had just left the yards and was on its way to the Ray yards, which are located about three miles west of the main yards. The Oslins live south of the railroad tracks. On the night of the accident Mrs. Oslin and her grown daughter went to prayer meeting at the Baptist church, which is situated north of appellant's road. Returning from prayer meeting, they traveled along the sidewalk on the east side of the avenue until they reached the railway tracks. South of the tracks the main traveled sidewalk is on the west side of the avenue, and they therefore started diagonally across the tracks and the avenue, and it was while they were so attempting to cross that Mrs. Oslin was struck. The engine was on the most northern track.

The evidence is sufficient to show that the engine was run at an excessively rapid rate of speed; that it approached the crossing without the bell being rung or the whistle sounded, or other warning signal being given; that the operatives of the engine discovered Mrs. Oslin's situation and peril in time, by the use of the means at their command, to have stopped the engine and avoided injuring her. Indeed, there is no complaint that the evidence is not sufficient to show negligence on the part of the company. The only question raised concerning this issue relates to the action of the trial judge in modifying a special charge requested by appellant.

The special charge and the court's modification thereof reads as follows: " 'The distance which the law requires a railroad company to sound the whistle before reaching a public crossing is one-quarter of a mile therefrom, and they are not required to sound it any nearer thereto. Head & Dillard, Attorneys for Defendant.' This instruction is given with the qualification that while the law does not absolutely require that the whistle upon a locomotive shall be sounded at a shorter distance than this from a public crossing in a city, still if the exercise of ordinary care upon the part of those operating such locomotive would require the sounding of the whisle nearer the crossing, then this, within the law, would make it the duty of the operatives of the locomotive to sound such whistle. Ordinary care means the care that a person of ordinary prudence would use under the particular circumstancees. Don A. Bliss, Judge Fifteenth Judicial District."

It is contended that the charge as modified and given is incorrect:

(1) Because when the operatives of a train or engine have sounded the whistle for a public crossing at a point eighty rods distant therefrom, they have complied with their full duty in that respect, and are not bound, under any circumstances, to again sound it nearer the crossing; and (2) because, if the duty to sound the whistle nearer the crossing exists in any case, the pleadings and evidence herein do not make such a case.

When the train operatives have sounded the whistle at the point fixed by the statute, they have performed the duty imposed upon them in this particular by the statute, and the failure to again sound the whistle at a point nearer the crossing would not, under any state of facts, constitute negligence as a matter of law. But it can not be doubted that conditions might exist which would render the sounding of the whistle at the statutory distance insufficient to convey warning of the train's approach to travelers at the crossing, and make necessary the giving of further signal by whistling as the only efficient means of notifying such travelers of the train's approach. In such cases, the additional warning should be given, and if an ordinarily prudent person, under the circumstaces, would have again sounded the whistle, a failure to do so would be negligence. It can not have been the purpose of the statute to relieve the train operatives of a duty to do what an ordinarily prudent person would have done. Such a construction of the statute would amount to the licensing of negligence. True, it is held in some cases that the sounding of the whistle near a public crossing is sometimes negligence, as where an unmanageable and frightened team is discovered at the crossing. But the fact that it would be negligence to sound the whistle under some circumstances would not prevent it from being negligence to fail to sound it under other conditions. The train operatives must elect, in all such cases, to act as ordinarily prudent persons would act in view of the surroundings.

There was evidence tending to show that the whistle was sounded about the time the engine left the yards, the point where this was done being eighty rods from the crossing, and that it was not again sounded until after the crossing was passed; that there are a great number of switch tracks in the yards, over which five switch engines, in addition to passing engines, were operated in the conduct of appellant's business; that the accident occurred in the heart of the city; that a strong wind was blowing, and that the view of one approaching the crossing as Mrs. Oslin and her daughter were doing was so obstructed by box cars, piles of ties and a scrap bin, all situated near the track, as to make it difficult to discover a train coming from the east, as this one was. As stated above, the accident occurred at night, and the crossing was a much traveled one. The track was straight from the edge of the yards to the crossing, and an electric street light was burning at the crossing. The engineer and fireman saw Mrs. Oslin and her daughter at the crossing some time before the engine reached it. The evidence was conflicting as to whether the bell was ringing. Mrs. Oslin and Miss Oslin both testified

that they heard no bell or whistle, and did not know of the train's approach until it was practically upon them. Under these circumstances we think that the court was justied in submitting to the jury the question as to wheher the failure to sound the whistle near the crossing constituted negligence. In the very nature of things the sounding of the whistle at the yards would not, under such conditions, be likely to convey to persons at the crossing notice of a coming train. It may be conceded that ordinarily the sounding of the whistle at the point fixed by law is all that should be required of the train operatives in that particular, but where the facts of the case on trial fairly raise the issue as to whether proper care would have required that it be sounded nearer the crossing, it is not error to submit the issue to the jury. The issue was raised in his case by the petition, it being charged that Mrs. Oslin's injuries were due to the negligence of appellant, and that such negligence consisted, among other things, in a failure to sound the whistle under the circumstances set out. The failure to sound the whistle at the statutory distance was not alleged, and no issue in respect of such failure was submitted to the jury. We are of opinion that the modified charge is not subject to the criticism urged against it.

Appellant's principal defense is based upon the theory that Mrs. Oslin was guilty of contributory negligence. It is strenuously insisted that the evidence is insufficient to excuse her conduct on the occasion of the accident. Both Mrs. Oslin and her daughter testified that before they went on the track they looked up and down it and neither saw nor heard any engine or train, and that their senses of sight and hearing were good. They further testified that they did not stop or loiter on the track, and that they were walking moderately fast. The evidence shows that notwithstanding the obstructions near the track, the view in the direction of the engine was clear for one-fourth of a mile after Mrs. Oslin and her daughter got within a few feet of the track. It would seem, therefore, that they did not look down the track toward the engine after they reached the point where their view was unobstructed, or that they did not cast their eyes far enough in that direction to observe the engine. We can not say, as a matter of law, that either condition would constitute negligence. It is not controverted that, as they approached the crossing and when very near to it, they looked and listened for a train, and this may have been all that an ordinarily prudent person would have done under the circumstances. Again, they testified that they looked as they went on the track, and the evidence is not such as to justify us in holding that they were mistaken in so testifying. They may have looked only far enough down the track to catch sight of a train which, if coming at a proper speed, might reach them before they could cross. It will be remembered that there was testimony to the effect that the engine was coming at an excessively high rate of speed. See Railway v. Fuller, 36 S. W. Rep., 319. Besides, the darkness of the night may have prevented them from seeing the engine. Another theory of contributory negligence is presented by the evidence of the engineer and

fireman, who testified that Mrs. Oslin had crossed the track upon which the engine was before the engine reached her, and that when she became aware of its approach she turned back and attempted to recross and was thereby injured. Mrs. Oslin and her daughter testified that they were on the track over which the engine was coming when they discovered its approach, and that Mrs. Oslin attempted to get off on the side from which she entered, and that Miss Oslin attempted to escape by crossing over on the other side. As Miss Oslin was not struck, it is probable that if Mrs. Oslin had acted as her daughter did, she too would have escaped injury. She, however, was nearest the engine, so the conclusion stated does not necessarily follow. In any event it may be that the most prudent person situated as was Mrs. Oslin, upon suddenly being made aware of the danger of being run down by the engine, would have acted as she did, although such action was not the best means of avoiding the danger. Even if Mrs. Oslin had crossed entirely over the track on which the engine was, and upon discovering the engine, turned to recross, such conduct on her part would not necessairly be negligent. Without having time to observe which of the four tracks the engine was on, and in view of the excitement induced by the sudden alarm and imminent danger, she can not be held negligent for failing to do what now appears to have been the most proper thing for her protection. We think that the evidence fully warrants the finding of the jury that Mrs. Oslin was not guilty of negligence.

Upon the issue of contributory negligence the court charged the jury as follows: "Still further, even if you should believe from the evidence that defendant's said employes operating said engine failed to use such care as persons of ordinary prudence would have used under like circumstances in any or all of the respects set forth in clauses numbers 1, 2, and 3, of this charge, still, if you believe from the evidence that the said Mary E. Oslin, if she had used her senses of sight and hearing in a manner that a person of ordinary prudence would have used the same under the circumstances, would have known of the approach of said engine in time to have avoided being injured; or if you believe from the evidence that plaintiff's said wife crossed over the track upon which said engine was going, and that she turned back over said crossing just as said engine reached her, and that in so doing she failed to use such care for her own safety as a person of ordinary prudence would have used under the circumstances, and that this helped to cause her said injury, then, in either of these events, you will find for the defendant; for in such a case the law would not allow any inquiry to be made as to who was the more to blame for such injury, the employes of the defendant operating said engine or the said Mary E. Oslin, but would simply deny any recovery."

The latter clause of this paragraph of the charge is attacked on the ground that it was error for the court to submit to the jury the question as to whether Mrs. Oslin's turning back helped to cause her injury, for the reason that, if she turned back, that fact of necessity contributed to

the accident. Conceding that the conclusion appellant seeks to have drawn from the fact, if it be a fact, that Mrs. Oslin had crossed the track and turned to recross it, is the only proper inference that can be indulged, still it does not follow that the charge was erroneous. The trial court is not bound to instruct the jury as to what facts are undisputed and as to what inferences of fact necessarily arise from proof of other given facts, but may properly submit the same to the jury for decision. It is only where an undisputed fact of a conclusive inference is submitted to the jury in a manner calculated to mislead or confuse, that the submission thereof becomes error. To this effect are the Rowland, McCoy, and Culpepper cases in 90 Texas, relied on by appellant. In those cases the court's charge authorized a verdict for the plaintiff in case the jury found that certain facts, the existence of which was undisputed, did not exist. Such is not the case here, and the charge complained of was not calculated to mislead the jury.

Appellant requested the court to charge the jury as follows: "In deciding whether or not Mrs. Mary E. Oslin exercised proper care in crossing defendant's track within the meaning of the general charge, you are instructed that if she so attempted to cross the track at a place where she knew trains and engines were frequently passing, it was her duty to exercise a degree of care proportioned to the risk thus caused to guard against injury therefrom, and in like manner, if you believe from the evidence that the view of the plaintiff's wife of trains approaching from the direction this one was, was obstructed by ties or cars, so as to make it more difficult for her to see the train than it otherwise would have been, then it was her duty to exercise a degree of care proportioned to the increased risk thus caused, and in like manner, if you believe from the evidence that at the time plaintiff's wife attempted to cross said track a strong wind was blowing and dust was flying so as to make it more difficult to discover an approaching train from the direction this one was coming, then it was her duty to exercise a degree of care proportioned to the increased risk thus caused." The requested charge was refused. The court instructed the jury on the issue of contributory negligence as shown by the quotation from the general charge copied in the next preceding paragraph and of this opinion, and in addition, in submitting plaintiff's theories of the case, except on the issue of discovered peril, authorized a finding for plaintiff only in the event that the jury believed that Mrs. Oslin, on the occasion of the accident, used the care for her own safety that a person of ordinary prudence would have used under the circumstances. We are of opinion that the general charge sufficiently presented to the jury the issue of contributory negligence, and rendered unnecessary the giving of further instructions upon the subject. We are, moreover, unwilling to approve the requested charge in all respects. An analysis of it shows that it is there declared to be the duty of Mrs. Oslin to exercise a degree of care proportioned to the risk, and not that degree of care proportioned to the risk that an ordinarily prudent person would have exercised under like conditions. The

charge also required her to exercise a degree of care proportioned to the risks actually existing, without reference to whether she knw, or ought have known, of the same. This is especially material in respect of the obstructions near the track. Again, the charge assumes that the existence of any conditions which would obstruct the view of the track rendered the crossing extra hazardous and imposed upon Mrs. Oslin the duty of exercising special care. Generally speaking, it is within the province of the jury alone to determine what conditions will decrease or diminish the hazard of crossing and require of the traveler a corresponding degree of care. In all such cases the care used should be commensurate with the danger, and its sufficiency is tested by the degree of care which the man of ordinary prudence would have exercised under similar surroundings. The traveler must take into consideration all the dangers of the crossing of which he has knowledge, or which he ought, in the exercise of ordinary diligence, to have known, but is not required to take cognizance of dangers of which he is ignorant and which he has used due care to ascertain. Whether a crossing is specially dangerous, and what facts will make it more so, are proper questions for decision by the jury. We think that the requested charge, taken as a whole, was reasonably calculated to confuse and mislead the jury, and that the trial court did not err in refusing it.

The only other questions presented in appellant's brief relate to rulings of the trial court on the admission of evidence. Appellee was permited to prove by one Williams that he passed the scene of the accident about 6 o'clock the next morning, and that a string of box cars was then standing on the sidetrack north of and near the main track and about 600 yards east of Myrick avenue. The testimony was admissible as tending to prove that the cars were there at the time of the accident, thereby obstructing Mrs. Oslin's view of the approaching engine. We have had occasion heretofore to express an opinion at some length upon this question, and think that a further discussion of it is unnecessary. Railroad v. Brown, 58 S. W. Rep., 44.

The other evidence of which appellants complain was that of appellee and Miss Mattie Oslin concerning Mrs. Oslin's nervous condition. Miss Oslin, speaking to this point, testied: "When we drop anything on the floor, or any noise like that, she seems to be nervous and jumps, and she jumps and seems to be right bad for some time to come, just nervous and trembling; sometimes she will tremble." Upon the same subject appellee testified: "I have been up with her a great many times, and one time especially I was up with her all night on account of her eyes. She claimed that her eyes were dancing in her head, and I would get up and light a lamp and did not see anything unusual about them." It will be noted that the only acts of Mrs. Oslin testified to by these witnesses were such as appear to have been involuntary, and that the only statement made by her to which the testimony complained of relates, was to the effect that her eyes were dancing in her head. It seems that there was nothing in fact the matter with her eyes, and that her

declaration was the result of her disturbed and broken nervous condition. The evidence was uncontradicted to the effect that she suffered a most severe nervous shock as the result of her injuries, and her conduct, as testified to by her husband and daughter, would be the natural consequence of such affection. Acts and declarations indicative of existing suffering and present pain are generally admissible as res gestae. Acts done and statements made pending litigation will sometimes be admitted. See Jackson v. Railway, 55 Southwestern Reporter, 376, where the question is fully discussed and the authorities cited and reviewed. As strong a case favorable to the admission of such testimony is presented here as in the Jackson case, and we conclude that there was no error in admitting the testimony. In this connection it is proper to say that the evidence as to the extent and nature of Mrs. Oslin's injuries was conclusive. While the verdict is unusually large, the sum awarded by the jury is certainly not more than sufficient to afford adequate legal compensation for her undoubted injuries. Without detailing her injuries and sufferings, we will say that they are of such character and extent that no complaint is made of excessive verdict.

We think that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

### ON MOTION TO MODIFY OPINION.

Appellant complains of the statement in the opinion, to the effect that the witness Williams testified that he saw a string of box cars standing on the side track east of Myrick avenue on the morning after the accident. The contention is that the bill of exceptions shows that the witness testified that he saw a train of cars standing at said place at the time stated. The contention is sustained by the record, and the statement of facts shows that the witness testified that he saw a train of cars standing at said place at the time stated. The contention is sustained by the record, and the statement of facts shows that the witness testified as set out in the bill. However, the statement of facts also shows that the witness testified on cross-examination as follows: "It looked to me like a whole train. There was no engine to it. I think box cars were towards me. I never noticed particularly whether they were box cars or not. Know it was not a flat car or coal car. Have not thought of it, but am sure it was a box car next to me. I did not count the cars, and never thought anything of them." We consider the difference between the statement contained in the opinion and the facts as disclosed by the record immaterial, but, in deference to the wishes of appellant, the motion to modify the opinion is granted, and the foregoing statements from the bill of exceptions and statement of facts are substituted for the statement complained of in the motion.

Writ of error refused