## TRINITY & B. V. RY. CO. v. CARPENTER.

(Court of Civil Appeals of Texas.    Nov. 26, 1910.    Rehearing Denied Dec. 10, 1910.)

1. EVIDENCE (§ 127*)—RES GESTÆ—PERSONAL INJURIES—DECLARATIONS OF PAIN.

Evidence that, after the injury, plaintiff complained of pain and was very nervous, was admissible when the pain or suffering complained of was contemporaneous with the declaration; it not being necessary that it be also res gestæ of the original injury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 377–382; Dec. Dig. § 127.*]

2. APPEAL AND ERROR (§ 1050*)—ADMISSION OF EVIDENCE—PREJUDICE.

In an action for injuries to a married woman while enceinte, the admission of evidence that at the birth of the child she complained of pain, if error, was not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1050.*]

3. EVIDENCE (§ 471*)—STATEMENT OF FACTS OR CONCLUSIONS.

Where, in an action for injury to a married woman while enceinte, it appeared that witness had been present at the birth of plaintiff's former child, and was also present at the birth of the one born shortly after the alleged injury, evidence that plaintiff suffered more pain accompanying the latter birth than when her former children were born was not objectionable as the witness' conclusion.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 471.*]

4. TRIAL (§ 253*)—REQUEST TO CHARGE—REFUSAL.

In an action against a carrier for injuries to a female passenger while enceinte because of alleged misconduct of the conductor, an instruction that if the passenger immediately after the

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

alleged conversation with the conductor suffered from cold, fear, and fever, that the condition of which she complained resulted from the cold and fever, or if the jury were unable to tell from the evidence whether it resulted from the conduct of the defendant's conductor, the jury should find for defendant, was properly refused, as ignoring the fact that plaintiff also claimed damages on account of shame and humiliation alleged to have been suffered while a passenger in consequence of the alleged misconduct of the conductor.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

5. CARRIERS (§ 317*) — TRANSPORTATION OF PASSENGERS—MISCONDUCT OF CONDUCTOR—EVIDENCE.

Where, in an action against a carrier for injuries to plaintiff's wife by alleged conversation with defendant's conductor in insisting on fare for plaintiff's child, defendant claimed that the acts of the conductor were not calculated to produce the effect alleged, evidence that a few days before the conversation in question the wife had a similar conversation with the same conductor, who adopted the same manner as on the occasion in question, and that no bad effects resulted to the wife therefrom, was admissible.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 317.*]

6. CARRIERS (§ 321*)—INJURY TO PASSENGER —ACT OF CONDUCTOR—INSTRUCTIONS.

Acts 30th Leg. c. 42, § 6, provides that any person using any transportation on any railroad or obtaining transportation for less than the same services furnished to others shall be guilty of a misdemeanor and fined. In an action against a carrier for alleged misconduct of its conductor with reference to a demand on the plaintiff's wife for fare for her child, the evidence showed that the conductor told plaintiff's wife that he could not carry the child without payment of fare, and that he would have to expel the child unless the fare was paid, and that under the statute it was an offense for him to permit the child to ride without payment of fare. There was evidence that the wife entered the train not expecting to pay fare for the child. Held error to refuse an instruction that the conductor was entitled to make such statement to plaintiff, and that, if such conversation was had the jury could not find for plaintiff unless the conductor's manner was rough, and as a result therefrom the wife suffered the injury alleged.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 321.*]

Appeal from District Court, Hill County; W. C. Wear, Judge.

Action by W. W. Carpenter against the Trinity & Brazos Valley Railway Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Andrews, Ball & Streetman and Morrow & Smithdeal, for appellant. Collins & Cummings, for appellee.

TALBOT, J. This is the second appeal in this case. See 119 S. W. 335. The suit was brought by the appellee against the appellant for damages alleged to have been sustained on account of injuries to his wife while she was a passenger on one of appellant's trains. In his first amended petition, filed September 9, 1909, and upon which the case was tried, the plaintiff alleged, in substance, that on or

about the 20th day of September, 1907, his wife, Isie Carpenter, became a passenger upon one of appellant's trains, and carried on said train with her a little child five years of age; that, before embarking upon said train, his wife provided herself with a ticket entitling her to ride upon said train from Hillsboro, Tex., to Mexia, Tex., but that she did not procure a ticket for said child because of its tender years and small size, and because no ticket had ever theretofore been demanded or required of said child, but that his wife was willing to, and did, pay fare for said child when same was demanded. The appellee further alleged that, after said train left Hillsboro, the appellant's conductor in charge thereof approached appellee's wife and took up said ticket, and asked appellee's wife for a ticket for the little girl, and that she replied that she had no ticket, as she was only five years old; that thereupon said conductor in a harsh, rough, uncouth, and violent tone of voice, and in an angry and threatening manner, demanded of appellee's wife that she pay for the transportation of said child, or he would put her and the child off the train; that she told the conductor that she had recently carried the child without paying fare, and that the conductor in the manner aforesaid told her he did not care if she had carried the child a thousand times she could not do it on that train, and that she had violated the law, and was guilty of a penitentiary offense, in getting upon the train without a ticket for the child, and that if he had a friend good enough to carry him on the train without a ticket, he would not tell it on him; that during said conversation appellee's wife paid fare for said child. Appellee also alleged that his wife was a woman of culture and refinement, and nervous and delicate, and that at the time she was seven months advanced in pregnancy, and therefore more subject to agitation and excitement than ordinarily; that all the acts and conduct of the said conductor were insulting, coarse, and humiliating to her; that there were other passengers upon the train who heard the conductor; and that because of his said acts, words, and conduct, and because of the nervousness, delicacy, and refinement of appellee's wife, and because of her said pregnant condition, and because of the presence of said passengers, she was greatly humiliated and caused to experience a feeling of shame, humiliation, and disgrace, and to become nervous and excited and sick, and caused to suffer physical and mental pain, whereby plaintiff was damaged in the sum of $5,000. The defendant answered by a general denial. The case was tried September 15, 1909, and resulted in a verdict and judgment in favor of the plaintiff for the sum of $3,000, and the defendant appealed.

There was no error, we believe, in permitting Mrs. Menefee to testify that she was

with Mrs. Carpenter, the plaintiff's wife, for 10 days during the month of June, 1909, subsequent to the alleged injuries, and that Mrs. Carpenter was very nervous and complained of pain. We regard the statement that Mrs. Carpenter was very nervous as the statement of a fact based upon the witness' personal observation of Mrs. Carpenter's condition, and not the expression of the witness' opinion or conclusion. Railway Co. v. Oslin, 26 Tex. Civ. App. 370, 63 S. W. 1039. The statement that Mrs. Carpenter complained of pain was, we think, admissible as tending to show that Mrs. Carpenter at the time the complaint was made was suffering physical pain as the result of the conduct of appellant's conductor, and not a mere declaration of pain suffered at some other time. That such complaints are admissible when the pain or suffering complained of was contemporaneous with the declaration, and need not be res gestæ with the original injury, is well settled. Railway Co. v. Haynes, 86 S. W. 934; Railway Co. v. Shafer, 54 Tex. 641; Jackson v. Railway Co., 23 Tex. Civ. App. 319, 55 S. W. 376; Railway Co. v. Barron, 78 Tex. 421, 14 S. W. 698.

The second assignment of error is: "The court erred in permitting the witness Mrs. Menefee to testify in answer to questions propounded to her by plaintiff that at the birth of the child Mrs. Carpenter complained of pain, and that she complained of more pain than she did at the birth of her other children, because said answer was an opinion and conclusion of the witness, and because it involved hearsay statements, and because it was immaterial." Permitting the witness to say that Mrs. Carpenter at the birth of her child which occurred after the alleged injuries complained of pain, if error at all was not of such a character as to warrant a reversal of the case, and the assertion in the assignment to the effect that the witness was permitted to state that Mrs. Carpenter complained on that occasion of more pain than she did at the birth of her other children, is not sustained by the bill of exceptions reserved to the ruling of the court. From this bill it appears that the question asked and answer given were as follows: "Q. Now, I will ask you whether or not she complained more or less when this child was born than she did at the birth of the others of her children? A. Yes, sir; she did." Considering the form of the question and the answer, it can as well be said that the witness intended to say, and did state, that Mrs. Carpenter complained less on the occasion in question, as that she complained more, and hence practically leaves the question unanswered. If, however, it appeared that Mrs. Menefee was present at the birth of Mrs. Carpenter's other children, to whom the question referred, as well as the birth of the child born after her alleged injuries and that she intended to say that Mrs. Carpenter complained more at the birth of the child born

after her injuries were received than at the birth of the other children, and her answer was so understood by the jury, then we think the answer was properly admitted as the statement of a fact, and not the witness' conclusion.

The refusal of the following special charge is made the basis of appellant's sixth assignment of error: "If you believe from the evidence that Mrs. Carpenter immediately after the alleged conversation with the conductor suffered from cold and fever, and that the condition of which she complains in her petition herein resulted from such cold and fever, or if you are unable to tell from the evidence whether the same resulted from such cold and fever, or from any act or conduct on the part of the defendant or its conductor, you will find for the defendant." There was no error in refusing this charge, because it ignored that branch of the case claiming damages on account of shame and humiliation alleged to have been suffered by Mrs. Carpenter in consequence of the alleged conduct on the part of appellant's conductor, and instructed the jury unqualifiedly to return a verdict in favor of the appellant if they found that the condition of which Mrs. Carpenter complained in her petition resulted from cold and fever, or to return such verdict if they were unable to tell from the evidence whether such condition resulted from cold and fever or from any act or conduct on the part of the appellant or its conductor. Of course, it will not be contended that the shame and humiliation which plaintiff alleges his wife suffered on account of the conduct of appellant's conductor may have resulted from the cold and fever with which she suffered shortly after such conduct. The charge, therefore, in directing absolutely a verdict for defendant in the event the jury believed the condition of which Mrs. Carpenter complained resulted from cold and fever, or to return such verdict if they were unable to tell from the evidence whether such condition resulted from cold and fever or the conduct of appellant's conductor, was defective, and to have given it in charge to the jury would have been positive error.

Appellant's third assignment complains that the court erred in refusing to allow the "defendant to prove by the witness Mrs. Menefee that a few days before the conversation with the conductor of which complaint is made the plaintiff's wife, Mrs. Carpenter, had a similar conversation with the same conductor on defendant's railroad, and the conductor's manner on that occasion was the same as on the occasion complained about, and that no bad effects resulted to Mrs. Carpenter from such conduct." The proposition is, in effect, that it being contended by appellant that the acts of the conductor complained of were not calculated to produce the effect alleged, and did not, in fact, produce such effect, appellant should have been permitted to show that the same or similar

conduct on the part of its conductor under the same or similar circumstances a few days previously had resulted in no inconvenience, shame, humiliation, or suffering. We are of the opinion the testimony offered was admissible, and its exclusion reversible error. Whether or not the injuries of which plaintiff complained were the proximate result of the alleged words, acts, and conduct of appellant's conductor, or resulted from other causes, was an issue sharply drawn by the testimony, and any legitimate fact or circumstance tending to aid the jury in a proper determination of the issue should have been admitted in evidence. But appellee insists that notwithstanding the ruling here complained of the court did permit the witnesses Mrs. Menefee, Mrs. Carpenter and the conductor to state just what did occur between Mrs. Carpenter and the conductor on the occasion, to which the excluded testimony related. We have examined the testimony of the witnesses relied on to sustain this insistence, and do not agree that the statement of either of said witnesses is the same or equivalent to the statement offered and excluded, nor does it appear that this testimony comprehends all that was said and done by appellant's conductor on the occasion in question, and the bill of exceptions shows that the witness (Mrs. Menefee), had she been permitted to do so, would have testified that the conduct of appellant's conductor towards Mrs. Carpenter was the same on both occasions referred to, and that said conduct on the first occasion had no injurious effect upon her. The ruling of the court attacked was not therefore cured and rendered harmless by the testimony relating to the subject of the assignment under consideration.

The refusal of the following special charge, requested by appellant, is assigned as error: "You are charged as the law of this case that the defendant's conductor had the right to tell Mrs. Carpenter that he could not carry the child without the payment of fare for it, and had the right to tell her that he would have to put the child off the train unless she paid fare for it, and he also had the right to explain to the said Mrs. Carpenter that the statute made it an offense for him to permit the child to ride without the payment of fare, and that it also made it an offense for any person to ride without the payment of fare, and, if you believe that he had such conversations with her and made such statements to her, you cannot find for her on that account, unless you should further believe from a preponderance of the evidence that his manner was harsh and rough, and that as a result of such manner on his part she suffered injury." This charge was not in our opinion fully covered, or the issue embodied therein submitted to the jury, as appellant was entitled to have it submitted by any other instruction given, and its refusal was material error, which very probably re-

sulted in injury to the appellant. The court charged the jury that if the conductor approached Mrs. Carpenter and addressed her in a harsh, rough, uncouth, and violent tone of voice, or in an angry manner, and demanded of her the payment of the fare for her child, or that she purchased a ticket for the child, and that the acts, words, and conduct or either on the part of said conductor were reasonably calculated to cause the injuries complained of, etc., to find for the plaintiff, and, as contended by counsel for appellant, should have explained to the jury by the giving of said special charge that the mere words of the conductor in which he told her she would have to pay fare for the child, and that he would have to put the child off unless she did pay for it, were not sufficient to give rise to a cause of action, and that they could not find for the plaintiff unless the conductor's manner was harsh and rough, and that as a result of such manner on his part she suffered injury. The importance or necessity of such an instruction to properly guard the rights of appellant seems clear by reason of the fact that there was testimony tending to show that Mrs. Carpenter boarded the train under the impression that she ought not to pay fare for her child, that the conductor told her that both he and she would be guilty of a penitentiary offense if the child was carried free, and because of the testimony of Dr. Menefee to the effect that if Mrs. Carpenter, being pregnant, and in such state of mind, was forced to pay fare for the child, it would likely wound or embarrass and humiliate her. This witness said: "With reference to whether a woman is more or less easily hurt or humiliated, or more or less subject to embarrassment or shame, when they are pregnant than when they are not, will say that when they are pregnant they are usually more easily hurt. Sometimes they get their feelings hurt when they are in that condition without much cause, and after having become agitated or embarrassed, or having their feelings wounded, it does not make any difference what the cause is. It is liable to have about the same effect upon them if the wound is sufficient. If he (the conductor) compelled her to pay fare (for the child), no matter how he did it, it might be likely to wound the feelings of a woman in that condition. * * * Just the mere fact of his making her do something that she felt like she ought not to do, no matter how he went about it, might have that effect upon her. If she felt like it would be wrong to pay the fare that would be calculated to disturb her feelings if he made her pay it. That would cause her embarrassment and agitation and humiliation, no matter how he went about it."

The purpose of the act of the Thirtieth Legislature (Laws 1907, c. 42), as declared in its caption, is among other things to prohibit railway companies and other common carrier from carrying persons free of charge.

and while it is not entirely clear whether, by its provisions, it is made an offense punishable by a fine for a person to accept transportation free of charge from the railway company's conductor, or other agent, in charge of its train, or only in case a free pass is presented and an attempt made to ride upon it, yet we have reached the conclusion that section 6 of the act makes it such an offense for a person to accept free transportation from the conductor; that is, to travel over such companies' roads on their trains by permission of the conductor without paying the regular fare therefor. Section 7 of said act also makes it an offense punishable by a fine for any officer, agent, or employé of a railway company to willfully suffer or permit to be done any act, matter, or thing in the act prohibited or to willfully omit or fail to do any act or thing required by the act to be done, and, if the offense be unlawful discrimination in rates, fares, or charges for transportation of passengers, such officer, agent, or employé so offending may, in addition to the fine provided for, at the discretion of the jury, be imprisoned in the penitentiary for a term not less than six months nor more than two years. Under this section, it would seem that, if a conductor of a railway company should willfully permit a child over five years of age to ride on a train in his charge without collecting fare for its passage, he would be guilty of unlawful discrimination in charges for transportation of passengers within the contemplation of said statute, and subject to prosecution and punishment therefor, as therein provided. The special charge under consideration was not, therefore, objectionable and properly refused, as contended by appellee, because it informed the jury that the appellant's conductor had the right to explain to Mrs. Carpenter that the statute made it an offense for him to permit her child to ride without the payment of fare, and that the statute also made it an offense for any person to ride without the payment of fare. We have discovered no reversible error in the assignments not discussed, and they will be overruled.

For the errors indicated, however, the judgment of the court below is reversed, and the cause remanded.