**TEXAS & PAC. RY. CO. v. DUNCAN et al.**

No. 4430.

Court of Civil Appeals of Texas. El Paso.
Aug. 2, 1945.

Rehearing Denied Oct. 4, 1945.

M. E. Clinton, of Dallas, and Roy D. Jackson and Burges, Scott, Rasberry & Hulse, all of El Paso, for appellant.

R. E. Cunningham, of El Paso, of counsel, and Cunningham, Ward & Cunningham, of El Paso, for appellees..

SUTTON, Justice.

This is an appeal from the 41st District Court of El Paso County.

The plaintiffs are father and son, the son suing through his father as next friend. The suit was brought to recover for personal injuries received by the son sustained while unloading a freight car in the defendant's freight yards at El Paso.

The suit was brought against the railway company and an individual, Walter Denman. The trial on the facts was to a jury. On a favorable verdict the court rendered judgment against each of the defendants, jointly and severally, for the sum of $100 for the father and $3,000 for the son. The railway company only has appealed.

It is not disputed that the minor plaintiff, Herbert Duncan, was injured while assisting in the unloading of a freight car in the defendant railway company's yards on August 2, 1944; that the car was loaded with sacked oyster shell shipped from Houston by the Shellbuilder Company to itself at El Paso under an original order bill of lading with instructions to notify Walter G. Denman Company; that the immediate cause of the accident was the bumping of a string of freight cars of which that being unloaded was a part by another car "kicked" onto the switch where such cars were, by the switching crew of the railway company.

It likewise developed without dispute that the railway company has fifteen separate sidings or tracks in the yards where the accident occurred. The tracks run generally in an east-west direction. Next to Overland Street on the north are three tracks with the usual and normal spacing between. To the south are twelve other tracks. Between the three and the twelve there is a space of some 50 to 60 feet. Within this space is a "shack" and oil tank. The space is used by employees of the company to park their cars while at work in and near the yards. The three tracks are known to the railway employees as "team tracks" 1, 2 and 3 numbered in order from the south to the north. The car being unloaded was parked with other cars on the south or track No. 1.

Employees of the company testified track No. 1, of the three tracks mentioned above, was used to park loaded freight cars on, upon which there was no "disposition," such as the freight had not been paid on or bills of lading surrendered, etc. Track No. 2 was used to set cars on going to the Southern Pacific Railroad and No. 3, the northernmost track on Overland Street, was used as a team track for unloading purposes.

Plaintiffs pleaded, and the jury found, Herbert Duncan was an invitee at the time of his injury; that the employees of the railway company were negligent in failing to keep a proper lookout; that the company was negligent in kicking the car against the other cars without notice or warning of its intention to do so; that it was negligent in kicking the car against the other cars without ascertaining it was reasonably safe to do so under the circumstances then exist-

ing; that it was negligent in failing to ascertain if there were persons working on the box car before kicking the car in; that it was negligent in failing to notify Herbert Duncan before it made the movement; and that all such acts of negligence were a proximate cause of the injury sustained.

The appellant, railway company, has thirty-seven points of error but we deem it unnecessary to set them each out, because the major portion of them have to do with a single question; that is, Was Herbert Duncan a trespasser upon the premises of the railway company at the time he was hurt? In response to a special issue submitted on behalf of the company, the jury found he was not.

It is the contention of the company the freight had not been paid on the car of shell prior to the injury and it was yet on the "hold" track No. 1, where under the rules and custom of the company, Herbert Duncan was not permitted to be, and since the order bill of lading had not at that time been surrendered, he was a trespasser as a matter of law. The defendant Denman, the party designated to be notified, testified that the cashier for the railway company, Mr. Kerr, telephoned him on August the first, the car had arrived; that he told Mr. Kerr he would mail a check for the amount of the freight due; that Kerr told him there was a balance due on a car of shell received about two weeks earlier in the sum of $13.95 and to please mail a check for that, too. He told Kerr he would; whereupon he said Kerr told him to go ahead and unload the car.

There is in evidence two of Denman's checks dated August 1, 1944, both payable to the railway company. One is for $119.54 marked "for shell-car 700050-MILW." which is the car involved. The other is for $13.95 and marked "For (WKP13156) Balce du car." The freight bill on the previous car is stamped paid August 2, 1944. The original letter from Denman to Mr. Kerr, Cashier T&P, dated August 1, 1944, is in evidence and the envelope in which it was sent post-marked at El Paso 10 a. m. August 2, 1944. In the letter Denman says he encloses the check for the balance on the previous car and one to cover the freight on the car in question. Both checks cleared on August 3, 1944.

Denman further testified, as did Herbert Duncan, they had previously unloaded cars on the so-called "hold" track No. 1. Den-

man and Mr. R. L. Myers, Terminal Train Master in charge of the yards for the company, testified Denman broke the seal in Myers' presence and inspected the car on August 1st. Denman, Herbert Duncan, and other employees of Denman loaded a large trailer truck out of the car where it was spotted on Track No. 1 about 10 a. m. August 2d. Myers testified he saw them there working and telephoned Mr. Kerr to send Watchman Chappell down there in all events and run them out. Nothing appears with respect to what happened thereafter, if anything. Neither Kerr nor Chappell testified.

The unloading crew delivered a car of shell loaded in the forenoon of August 2, 1944, and returned about 5:30 p. m. for another load. The plaintiff, Herbert Duncan, while getting in the box car, was injured as a result of the kicking of another box car against the string of cars, one of which was the car he was helping to unload.

We have recited what we regard as the major facts on the point in issue and think the facts recited together with the other incidental facts in the record amply sufficient to sustain and justify the finding of the jury that the injured boy was an invitee and not unlawfully upon the premises of the railway company at the time of his injury.

In support of its position, the company relies upon the provision of Article 895, Vernon's R.C.S., which makes the carrier liable for a wrongful delivery of goods shipped on order when it fails to take up and cancel such bill of lading under the conditions therein provided; Rule No. 7, Consolidated Freight Classification approved by the Interstate Commerce Commission, which also provides for the surrender of an order bill of lading before the delivery of the goods, except under certain special conditions therein named. Louthian v. Fort Worth & D. C. Ry. Co., 50 Tex.Civ.App. 613, 111 S.W. 665; Missouri, K. & T. Ry. Co. v. Malone, 102 Tex. 269, 115 S.W. 1158.

There is nothing in either the statute or the rule against a waiver of their provisions. It is clear the statute merely fixes a liability in accordance with established rules of law somewhat in the nature of a penalty for the delivery of goods without the surrender of an order bill. In other words, it fixes the liability on the showing of the delivery to one while the order bill is outstanding in another. The rule merely provides a

guide for the transaction of rail carrier's business. In the cases cited there was no claim the injured parties were invited in anywise to enter upon the premises nor given permission to enter. The facts in each of those cases are wholly different from the facts here. In this case it is not disputed that the shell was Denman's and paid for and all he had to do was pay the freight. It has been held a carrier may deliver goods to one entitled to receive them without demanding and receiving the bill of lading. Nashville, C. & St. L. Ry. Co. v. Grayson County National Bank, 100 Tex. 17, 93 S. W. 431; St. Louis Southwestern Ry. Co. of Texas v. Gilbreath, Tex.Civ.App., 144 S. W. 1051; Fleming v. St. Louis S. W. Ry. Co., Tex.Civ.App., 13 S.W.2d 440.

The wrongful delivery to one not entitled to receive goods with an order bill of lading outstanding has generally been held to render the carrier liable in damages, Nashville, etc. v. Grayson County National Bank, supra; Gulf, C. & S. F. Ry. Co. v. Buckholts State Bank, Tex.Civ.App., 258 S.W. 491, reversed on another point, Tex. Com.App., 270 S.W. 1008; Davis, Agent, v. First National Bank of Longview, Tex.Civ. App., 245 S.W. 1009, writ refused, but we have found no prohibition against such a delivery.

■■ As heretofore observed, the testimony and evidence are amply sufficient to warrant and support the finding of the jury that Herbert Duncan, the injured plaintiff, was an invitee of the railway company. The employees in charge of the yards and of the car of shell knew there was a crew down there unloading it. In such circumstances it was the duty of the engine crew and other employees of the railroad company to use ordinary care to provide for the safety of the plaintiff, Herbert Duncan, and to require the engine crew to use ordinary care to avoid striking the car the Duncan boy was unloading, St. Louis S. W. Ry. Co. v. Kennemore, 81 S.W. 802, writ refused, and such duty would include the giving of notice of an intention to move the car and such warning and signals as any ordinarily prudent person would give under the circumstances to warn him of the movement of cars which might in the circumstances affect him. Texas & P. Ry. Co. v. Short, Tex.Civ.App., 58 S.W. 56; Galveston, H., & S. A. Ry. Co. v. Pingenot, Tex.Civ.App. 142 S.W. 93, writ refused; Missouri, K. & T. Ry. Co. v. Oslin, 26 Tex.Civ.App. 370, 63 S.W. 1039. All points predicated on the proposition the plaintiff, Herbert Duncan, was a trespasser and the company owed him no duty are overruled.

■ Complaint is made that the court erred in permitting witnesses to testify they did not hear a bell or whistle just prior to the accident. Plaintiffs had pleaded the railway company was negligent in failing to give any signals of its intention to shove a car in on that being unloaded. Under the authorities last cited, it is thought the testimony is admissible. In all events, like that complained of, that there was no blue flag out and that no one had warned or told them not to work where they were, could be nothing less than immaterial, as was the objection made to it, and harmless. It is elementary immaterial and irrelevant testimony is harmless unless it be prejudicial to the party against whom it is given. Clearly there is nothing prejudicial in the testimony complained of.

■ The company complains there is error in refusing to strike the testimony of Denman that there was no reason for a bill of lading to be on the car involved in the accident. This point is overruled, because it is clear the construction placed on it by the company is erroneous. Taken with the testimony in connection with the quotation, it unmistakably means there was no reason why there should have been an order bill of lading because he had bought and paid for the shell before it was shipped and nothing remained but to pay the freight.

■ The company complains there is no testimony in the record to justify the instruction the jury may take into consideration the loss of earning capacity prior to the time when Herbert will reach 21 years of age in determining the father's damage, fixed at $100, nor loss of earning capacity after he arrives at 21 in fixing his damage, which was fixed at $3,000, and that the verdict is excessive. At the time of the accident and injury, the boy was 15 years old. He was a school boy and had worked at various times for different people for some two years before the accident. He had drawn as much as 50¢ per hour. The work he had engaged in was manual and rather heavy for a boy. Since the accident, he had not been able to lift with his right arm as he had done before. He was right-handed. The arm did not always function properly. As he described it, it would hang on him and when he started down, it would not go and he would have to try again. It pained

him some. The medical testimony is that he had cuts on the back of his right arm. One division of the triceps muscle had been severely cut. It required several stitches to suture the ends of the muscle back together and probably a dozen to close the opening in the skin through which the ends of the muscle protruded. The triceps muscle has three heads of origin and its function is to extend the forearm. In the language of the doctor, with time and use it should get back to about the size of the left arm. "Truthfully", it will never be normal. It made a fibrous union. It would be difficult to determine the percentage.

This testimony justifies the instructions complained of. It is evident the boy will have a handicap throughout life. The doctor was unable to say the "percentage." The jury certainly could not, if the doctor couldn't. They probably knew, as men generally know, that old injuries produce unexpected results in late and later life. They could only estimate as best they could the amount of damage. That was the function of the jury and we cannot say a handicap, though small it may be, incurred by so young a boy to remain for life, is not worth $3,000.

■ Issues submitted called upon the jury to find if plaintiff, Herbert Duncan, was an invitee, and also that he was not a trespasser. Points are made on these submissions because, it is said the jury are required to answer a question of law, or a mixed question of fact and of law. Definitions of invitee and trespasser were given as follows:

"The term 'invitee,' as used in this cause, includes an employee of a consignee of freight. A consignee of freight and his employees, engaged in unloading a freight car on the premises of a railroad company, at the invitation, express or implied, of such railroad company, are invitees. A consignee of freight and his employees, engaged in unloading freight on the premises of the railroad company, by permissive use only, are not invitees."

"The term 'trespasser', as used in this charge, includes a person who is upon the premises of a railroad company without invitation, express or implied, and without consent or permission, express or implied, of such railroad company. A consignee of freight, and his employees, engaged in unloading a freight car on the premises of a railroad company, who have not been in-

vited, expressly or impliedly, by such railroad company so to do, and who have not the consent or permission, express or implied, of such railroad company, to so unload the freight cars, are trespassers."

We think the definitions correct and the issues not subject to the exceptions made. It follows, of course, that we regard the points raised on the insufficiency and the incorrectness of the definitions not well taken.

■ It is urged there is error in the submission of the following special issue: "Do you find from a preponderance of the evidence that on or about August 2, 1944, just prior to the accident, the defendant railway company was negligent in kicking one of its railroad cars against the string of freight cars, from one of which plaintiff, Herbert Duncan, was unloading merchandise, without first ascertaining that it was reasonably safe to make such movement under the circumstances then and there existing?" because it is said it is duplicitous. For the same reason, error is urged on the submission of the succeeding issue on proximate cause. We do not regard the issue as duplicitous and the point is overruled.

A point is made on the same issues on the ground it is too general and does not specify to the jury any specific acts of negligence whereby the court and the defendant may know the finding of the jury on the issue. This point is likewise thought to be without merit and is overruled.

■ The court inquired of the jury if the track upon which the car involved was a "team track" within the meaning of the Company's Rule 727 which required employees when a car on a team track was to be moved or coupled into to ascertain first if there were persons in, under or between such cars and notify them of the movement before it is made. It is urged the submission of this issue is error because it calls upon the jury to make a finding upon a conclusion of law and calls for an interpretation of the rule, which is the duty of the court. The rule does not define a team track. It is for the guidance of the employees. They doubtless understand its application. It is difficult to understand just what the jury might find "within the meaning of the rule". The issues immediately following are complete and sufficient within themselves. It seems this issue submits little or nothing at all. But it becomes immaterial and harmless in all events, because

the jury had found negligence against the company on other grounds and it is held if it be error it is harmless. West Texas Coaches v. Madi, Tex.Com.App., 26 S.W.2d 199, and the cases there cited.

We are of the opinion there is no error in the judgment of the trial court and it is affirmed.