CARPENTER v. TRINITY & B. V. RY. CO.†

(Court of Civil Appeals of Texas. Dallas. March 16, 1912. Rehearing Denied April 13, 1912.)

1. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—SUBMISSION OF ISSUES.

In an action for damages from a railway conductor's abusive language to a woman, it is not reversible error to submit to the jury the question of whether or not she was then a passenger, though the undisputed evidence shows her to have been a passenger.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

2. CARRIERS (§ 318*)—PASSENGERS—DAMAGES —EVIDENCE.

In an action for damages from a conductor's statement to one that she was guilty of a penitentiary offense in getting on a train without a ticket for her child, evidence *held* to sus-

tain a finding that the statement was made before payment of the child's fare.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1370–1314; Dec. Dig. § 318.*]

3. TRIAL (§ 260*)—REFUSAL OF INSTRUCTION.

Where, in an action for damages from a railway conductor's statement to one that she was guilty of a penitentiary offense in getting on the train without a ticket for her child, the evidence conflicted upon whether she had paid the child's fare at the time of the alleged statement, and the court instructed that after she had paid the child's fare she was a passenger, and that if she was a passenger at the time the statement was made, and suffered as a proximate result, the verdict should be for the plaintiff, it was not reversible error to refuse a requested instruction that she was a passenger after paying the child's fare, and that the conductor would have no right after that time to tell her that she was guilty of any offense.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

4. CARRIERS (§ 22*) — PASSENGERS — FREE TRANSPORTATION—CRIMINAL OFFENSE.

Under Laws 1909, c. 42, § 6, making it an offense for a person to accept free transportation from a railway conductor, it is a criminal offense for one to accept free transportation for a child over five years of age, though no free pass, frank, or privilege is presented for the same.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 56, 1010; Dec. Dig. § 22.*]

5. CARRIERS (§ 321*)—PASSENGERS—DAMAGES—INSTRUCTIONS.

Though the issues raised by the pleadings and evidence, in an action for damages to one from a railway conductor's abusive language to her, concerned his erroneous statement to her that she had been guilty of a penitentiary offense in getting on the train without a ticket for her child, it was proper to instruct that under the law it was a misdemeanor for one to secure free transportation, and that it was the conductor's right to courteously explain why he demanded fare for the child.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1337, 1343; Dec. Dig. § 321.*]

6. TRIAL (§ 253*)—INSTRUCTIONS—IGNORING ISSUES—"CONDITION."

In an action for physical pain, and for shame, humiliation, and suffering caused the plaintiff's wife from a conductor's abusive language to her, no element of the damages sued for was ignored by an instruction that the burden is upon the plaintiff to show by a preponderance of the evidence that she was injured and is suffering as alleged in the pleadings, and that "her said condition or her said injury and suffering are the direct and proximate result of the misconduct on the part of the defendant's conductor," and that if the jury should believe, by a preponderance of the evidence, that her "condition" resulted from some misconduct on the part of the conductor they should return a verdict in favor of defendant; the word "condition," as last used, in view of the other quoted phrases, comprehending every element of damage claimed in the petition, and clearly having reference to both her physical and mental condition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*

For other definitions, see Words and Phrases, vol. 2, pp. 1394–1400.]

7. TRIAL (§ 296*) — INSTRUCTIONS — CURE BY OTHER INSTRUCTIONS.

If there was any error in such instruction, it was harmless, where the main charge submitted to the jury the plaintiff's right to recover all the elements of damage claimed in the petition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

Appeal from District Court, Hill County; F. E. McKee, Special Judge.

Action by W. W. Carpenter against the Trinity & Brazos Valley Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

See, also, 132 S. W. 837.

Collins & Cummings, of Hillsboro, for appellant. Morrow & Morrow, of Hillsboro, for appellee.

TALBOT, J. This is the third time this case has been before this court. The opinion delivered on the first appeal will be found in 55 Tex. Civ. App. 627, 119 S. W. 335, and the opinion on the second appeal is reported in 132 S. W. 837. The suit was brought by the appellant against the appellee to recover damages, alleged to have been sustained by his wife, Mrs. Isie Carpenter, while she was a passenger on one of appellee's passenger trains. It is alleged in plaintiff's second amended petition, filed January 4, 1911, and upon which the case was tried, in substance, that on or about the 20th day of September, 1907, Mrs. Carpenter, accompanied by her little daughter, five years of age, boarded the defendant's regular passenger train at Hillsboro, Tex., and became a passenger thereon to be carried to Mexia, in Limestone county, Tex.; that plaintiff's said wife, before boarding the train purchased from defendant's agent at Hillsboro a ticket for herself, entitling her to ride upon said train from Hillsboro to Mexia; that shortly after the defendant's said train had departed from Hillsboro on its journey to Mexia the agent and conductor of the defendant in charge of said train approached plaintiff's wife and took up her ticket, and asked for a ticket for the little girl; that plaintiff's wife then told the conductor that she had no ticket for the little girl, as she was only five years old; that thereupon said conductor, in a harsh, rough, uncouth, and violent tone of voice, and in an angry and threatening manner, demanded of plaintiff's wife that she pay him 75 cents for the transportation of said child, or he would put her and the child off of the train; that plaintiff's wife told the conductor that she had always, and at a very recent date had, carried the child with her on the train without paying any fare, and that the conductor, in the manner stated, told her that he did not care if she had carried said child a thousand times, she could not do it on that train, and that she had violated the law, and was guilty of a penitentiary offense under the anti-pass law by getting on the train without a ticket for the child; that plain-

---

tiff's wife, did, when required by said conductor, pay fare for said child. The plaintiff further alleged that his wife was, at the time the conductor acted as charged, in a delicate condition; that she was a woman of culture and refinement; that the acts and conduct of said conductor were coarse, insulting, and humiliating, and caused plaintiff's wife to experience a feeling of shame, humiliation, and disgrace, and to become nervous, excited, and sick, and caused her to suffer physical pain and mental anguish.

The defendant answered by a general denial, and specially that the plaintiff's wife got on the train knowing that she would be required to pay fare for her child, and without any intention of paying same, and was not in fact a passenger on said train; that under a rule of the defendant its conductor would be subject to discharge from its service if he should carry a passenger without requiring the payment of fare; and that a statute of this state made it an offense for any conductor in charge of a railway train to carry a passenger without requiring the payment of fare. The cause was tried before the court and a jury, and the trial resulted in a verdict and judgment for the defendant, and the plaintiff appealed.

[1] The appellant's first assignment of error is as follows: "The court erred in the second paragraph of his main charge, wherein he submits to the jury the issue as to whether Mrs. Carpenter was a passenger at the time the conductor made the statement to her with reference to her being guilty of a penitentiary offense, when the undisputed evidence shows that at the time that language was used a fare for the child had been paid, and that she was a passenger. Said charge was therefore erroneous; and the court should have instructed the jury that she was a passenger at that time." If it should be conceded that the facts enumerated in the assignment were established by the undisputed evidence, still we think the error complained of, if error, was not of such a character as to require a reversal of the case.

[2] But appellee contends, in effect, and we agree with the contention, that it was not shown by the undisputed evidence that at the time the appellee's conductor used the language to appellant's wife, with reference to her being guilty of a penitentiary offense, that she had paid the fare for her child. The material testimony bearing upon the question is as follows:

F. H. Herring, defendant's conductor, testified: "Before I ever mentioned the penitentiary to that woman, she had paid the fare for that child, and I then recognized her as a passenger on the train. The only time I ever had any conversation with her, as to whether she was or was not guilty of a penitentiary offense, was after she had paid fare for the child, and after I recognized her as a passenger. When I entered the car

that Mrs. Carpenter was in on this last occasion, she was in the rear of the car on the second seat, and her mother was across on the opposite side; and I approached Mrs. Carpenter and asked her for her ticket, and she handed it to me, and I asked her for a ticket for the child." He further testified: "After she had paid the fare for the child, and after I recognized her as a passenger on the train, I went back to where she was sitting and began a conversation with her without any invitation on her part; but in that conversation I did not tell her she was guilty of a penitentiary offense in getting on the train without a ticket for the child. I swear that I did not tell her that. I am just as positive of that fact as of any fact I have testified to."

Appellant's wife, Mrs. Carpenter, testified: "After the train pulled out from Hillsboro on its way to Mexia, the defendant's conductor on said train came to where I was sitting and had a conversation with me. He asked me if I had a ticket for that child, and I told him I did not, and he asked why I did not, and I told him that I did not know that it was necessary to get a ticket for her, and he said it was necessary, and said I should have purchased a ticket, and said I would have to get one. I said: 'Well, when I get to the next station, I will get a ticket for the child; and for my own satisfaction I will find out the age children have to pay fare.' And he said, 'I have tickets to sell, and you need not bother about that.' I said, 'I have purchased tickets for children on other roads —on the T. & P.—for children as large as this child and larger, and tickets were not demanded;' and I told him that I did not know the age a child was required to pay fare. I told him of the occurrence when I bought a ticket for the 10 year old boy, and that the money was returned to me; and he said, 'If I were you, and conductors on other roads smuggled my children, I would not give them away.' I told him they had not been smuggled through, but that they came through free, and I told him I had no intimate friends who were conductors on other roads. He said that it made no difference what occurred on other roads; that his road and other roads were different; and that I would have to pay on that child, or he would put her off the train. He also said that I was guilty of a penitentiary offense in getting on the train without a ticket for the child, and that I was in as much danger as he was. I told him that I did not know it, and that I was ignorant of it, and he spoke harshly to me and said he would put the child off. And I told him if he would wait till I got to the next depot that I would get change and buy a ticket, and he said: 'No; I have tickets to sell.' I told him I had no change, but I could get it from my mother; and I did get it and pay the fare. I told the conductor that the reason I did not get a ticket for the little girl was because I did not think it was

necessary. He said I was guilty of a penitentiary offense in getting on the train without a ticket for the child, and that I was guilty as much so as he. After I paid the fare the conductor demanded for the little girl, and after he had left me, he returned to me after that and said he might be caused to lose his job; that there might be an official on the train hearing the conversation."

Mrs. Menefee, mother of Mrs. Carpenter, testified: "I know that he told her she was guilty of a penitentiary offense. That was before I gave her the money; and she told him she wouldn't buy a ticket from him, and he told her she had committed a penitentiary offense for getting on the train without a ticket. Of course, we didn't have any for ourselves then. He told her she would have to pay for the child, and she told him she would do it if she had to, but wouldn't buy a ticket from him, and he told her she would have to pay for it; and she had money herself and paid for it, and he told her she had committed a penitentiary offense, and that was when he told her about conductors on other trains smuggling children through. The conversation that time was about like it was before, and it was the same conductor. He told her that when she refused to pay for the child. He told her it was a penitentiary offense to carry the child without pay; and I think he told her he would be guilty of a penitentiary offense himself. I think he told her that a law had been recently passed which made it a penitentiary offense to carry any one without pay. My best recollection is that he told her that, and after he said that I gave her the money, and she paid the fare."

This testimony, considered together, was sufficient to authorize a finding by the jury that the alleged statement of the conductor to appellant's wife, to the effect that she was guilty of a penitentiary offense in seeking to have her child transported over appellee's road without paying fare for its transportation, was made in the course of the conversation between Mrs. Carpenter and said conductor, in which the former was protesting against the payment of fare for her child, and the latter insisting on the payment of such fare, and before such fare was actually paid.

The same question is raised by the second assignment of error, and what we have said disposes of that assignment adversely to appellant's contention.

[3] The third assignment of error complains of the court's refusal to give the following instruction requested by appellant, namely: "You are instructed that after Mrs. Carpenter paid the fare for the child she was a passenger, and the defendant's conductor would have no right after that time to tell that she was guilty of any offense while she was on said train, even though she may have been so guilty; and this charge is

entitled to the same weight as the main charge." We think the court's action in refusing this charge does not constitute reversible error. The evidence was not, in our opinion, undisputed that Mrs. Carpenter had paid fare for her child at the time of the alleged conversation, in which it is charged that the conductor accused her of having been guilty of a penitentiary offense; and in the first paragraph of the main charge the jury was instructed that after Mrs. Carpenter paid the fare demanded of her for the transportation of her child from Hillsboro to Mexia she was a passenger on defendant's train; and in the second paragraph of said charge, wherein the material facts upon which the plaintiff sought a recovery are grouped, they were charged, in substance, that if they believed Mrs. Carpenter was a passenger at the time she was accused by the defendant's conductor of being guilty of a penitentiary offense, and further believed that, as a proximate result of such conduct, Mrs. Carpenter was humiliated and caused to experience a feeling of shame, etc., to find a verdict in favor of the plaintiff. The obvious effect of these instructions was to tell the jury that after Mrs. Carpenter paid the fare demanded for her child she became and was a passenger on defendant's train; and that if, after she became such passenger, defendant's conductor accused her "of having committed a penitentiary offense," humiliated her, and proximately caused her to suffer shame, etc., the defendant could not escape liability for such conduct on the part of its conductor, and, if they so found, to return a verdict for plaintiff. The clear implication and effect of these instructions is that, after Mrs. Carpenter became a passenger on defendant's train, its conductor had no legal right to tell her she had been guilty of a penitentiary offense; and that if at such time he did so the defendant would be liable. We are therefore of the opinion that the failure of the court to give the requested instruction resulted in no substantial injury to the plaintiff, and that the assignment should be overruled.

[4] The fourth assignment is as follows: "The court erred in said fourth paragraph of his main charge to the jury, wherein the jury were instructed that the law declares, and so declared at the time of the transactions in question, it to be an offense, punishable by fine, for a person, subject to the payment of fare, to avoid the payment of such fare on a railway passenger train, and that the defendant's said conductor had the right, in a reasonably courteous and respectful manner, to explain to the plaintiff's said wife what such laws were in these respects; and, if he did so in a reasonably courteous and respectful manner, then defendant would not be liable, even though the said Mrs. Carpenter may have become excited and nervous therefrom, as alleged, for the reason that

said charge mistakes the law, in that there is no law in this state making it an offense for any individual to get upon or ride upon a train in this state without the payment of fare." The proposition accompanying this assignment is that "there is no law in this state making it an offense for an individual to accept transportation, free of charge, from a railway company's conductor, or other agent, in charge of its train, unless such person presents to said conductor a free pass, frank, or privilege, issued to some other party." We decided these questions adversely to the contention of appellant on the second appeal of this case. See 132 S. W. 837. We then said: "The purpose of the act of the Thirtieth Legislature (Laws 1907, c. 42), as declared in its caption, is, among other things, to prohibit railway companies and other common carriers from carrying persons free of charge; and, while it is not entirely. clear whether, by its provisions, it is made an offense, punishable by a fine, for a person to accept transportation, free of charge, from the railway company's conductor, or other agent, in charge of its train, or only in case a free pass is presented and an attempt made to ride upon it, yet we have reached the conclusion that section 6 of the act makes it such an offense for a person to accept free transportation from the conductor; that is, to travel over such companies' roads on their trains, by permission of the conductor, without paying the regular fare therefor. Section 7 of said act also makes it an offense, punishable by a fine, for any officer, agent, or employé of a railway company to willfully suffer or permit to be done any act, matter, or thing in the act prohibited, or to willfully omit or fail to do any act or thing required by the act to be done; and, if the offense be unlawful discrimination in rates, fares, or charges for transportation of passengers, such officer, agent, or employé so offending may, in addition to the fine provided for, at the discretion of the jury, be imprisoned in the penitentiary for a term not less than six months nor more than two years. Under this section, it would seem that, if a conductor of a railway company should willfully permit a child over five years of age to ride on a train in his charge without collecting fare for its passage, he would be guilty of unlawful discrimination in charges for transportation of passengers, within the contemplation of said statute, and subject to prosecution and punishment therefor, as therein provided. The special charge under consideration was not, therefore, objectionable and properly refused, as contended by appellee, because it informed the jury that the appellant's conductor had the right to explain to Mrs. Carpenter that the statute made it an offense for him to permit her child to ride without the payment of fare; and that the statute also made it an offense for any person to ride without the payment of fare." We still entertain the views above expressed, and state that, in so far as the opinion of this court, delivered on the first appeal of this case, and reported in 55 Tex. Civ. App. 627, 119 S. W. 335, conflicts with the views expressed on the second appeal and now entertained on this subject, the same is overruled.

[5] But appellant makes the further proposition that, "even though the statute made it an offense for the appellant's wife to accept free transportation for her child; yet it was error to charge the jury that it was an offense, punishable by fine, for a person, subject to the payment of fare, to avoid the payment of such fare on a railway train; and that defendant's conductor had the right to explain to her such law, for the reason that said charge was not based upon any issue raised by the pleading or the evidence in this case." The principle contended for in this proposition is a well-established one; but we do not think its application is called for in this instance. It is true the allegation of plaintiff's petition is that the conductor told Mrs. Carpenter she had violated the law, and was guilty of a penitentiary offense under the anti-pass law, by getting on the train without a ticket for her child, and not that he told her she was guilty of an offense punishable by fine. And it is also true that the record fails to show any evidence to the effect that defendant's conductor told Mrs. Carpenter that she was guilty of a misdemeanor, punishable by fine, in getting on the train without a ticket for her child; but the importance of the charge to the defendant, and its main purpose and evident effect, was to inform the jury, in accordance with the views of this court, that defendant's conductor had the right, in a reasonably courteous and respectful manner to explain his conduct in demanding the payment of fare for the transportation of Mrs. Carpenter's child; and it was essential to a complete charge on the subject, and to a full understanding of this right on the part of the jury, that the court declare what the law was touching the duty of the conductor in regard to the collection of fare, and of a passenger to pay fare, together with the consequences under the law for a failure to perform those respective duties. That the conductor may have misunderstood and misstated the law, as applicable to one endeavoring to secure free transportation over a railroad, did not deprive appellee of the right to have the jury properly instructed as to what the law was and the conductor's right, in a courteous and respectful manner, to explain to Mrs. Carpenter why he demanded fare for her child. We have heretofore held that a similar charge to the one under consideration was a proper charge under the facts of this case; and we are not prepared to depart from that holding. Carpenter v. Railway Co., 132 S. W. 837.

[6] The court charged the jury, at the instance of the defendant, as follows: "The burden of proof is on the plaintiff to show, by a preponderance of the evidence, that Mrs. Carpenter was injured and is suffering as alleged in the pleadings; and the burden is also on the plaintiff to show, by a preponderance of the evidence, that her said condition, or her said injury and suffering, are the direct and proximate result of the misconduct on the part of the defendant's conductor; and, if you should not believe, by a preponderance of the evidence, that her condition resulted from some misconduct on the part of the defendant's conductor, you will return a verdict in favor of the defendant." This charge is objected to, on the ground that it "peremptorily instructed the jury that if they did not believe, from a preponderance of the evidence, that *the condition* of Mrs. Carpenter resulted from misconduct on the part of the conductor that they must *return a verdict for the defendant*, and thereby ignored the element of damage for which plaintiff sued, growing out of the *shame, humiliation, and disgrace* that plaintiff's wife may have suffered on account of the language and conduct of said conductor." We are of opinion the charge is not subject to appellant's criticism. By it the jury were instructed that the "burden of proof is on the plaintiff to show, by a preponderance of the evidence, that Mrs. Carpenter was injured and is suffering as alleged in the pleadings." The expression "as alleged in the pleadings," while we should not encourage that form of a charge, includes the humiliation, shame, and disgrace which appellant claims is ignored by the charge. Again, in further directing that the burden was upon plaintiff to show that his wife's "said condition, or her said injury and suffering, are the direct and proximate result of the misconduct on the part of defendant's conductor," and in instructing them that if the *condition* of plaintiff's wife did not result from misconduct on the part of defendant's conductor to find for defendant, the court did not, by the charge in question, ignore the elements of damage for which plaintiff sued,

growing out of the shame, humiliation, and disgrace alleged to have been suffered by her. The language of the charge, "her said condition, or her said injury, and suffering," comprehends every element of damage claimed in the petition; and the use of the word "condition" alone in the subsequent part of the charge must be construed, as it was doubtless understood by the jury, as having reference not only to her physical, but also her mental, condition.

[7] But, however this may be, we think the charge furnished no ground for a reversal of the case. This is for the reason that the elements of damage claimed by the plaintiff was fully recognized and plaintiff's right to recover the same submitted to the jury in the court's main charge. In the second paragraph of the general charge, the jury are instructed, among other things, that if the acts, words, and conduct, or either, if any, on the part of defendant's conductor was reasonably calculated to cause the injuries complained of by plaintiff, and that, as a proximate result of said conduct on the part of said conductor Mrs. Carpenter was humiliated, or caused to experience a feeling of shame, and as a result thereof to become nervous or sick, and to suffer in consequence thereof, as alleged, to find for plaintiff. In the seventh paragraph of said charge, the jury were told, in effect, that in estimating plaintiff's damages, if they should believe damage had been sustained by him, to take into consideration the "mental and physical pain suffered by his wife, if any, consequent upon such injuries." If, therefore, there was any error in the charge, it is not likely that the jury was misled thereby to the injury of appellant. We do not concur in the view that the charge here complained of contains the same vice as that found to be embodied in a special charge, given by the court at the request of defendant, and held by this court to be erroneous on the first appeal of this case.

None of appellant's assignments of error, in our judgment, point out reversible error; and the judgment of the court below is therefore affirmed.