Missouri, Kansas & Texas Railway Company of Texas v.
Seley & Early.

Decided January 7, 1903.

**Carrier—Wrongful Delivery—Loss by Act of God.**

Grain shipped by plaintiffs to Galveston, to their own order, care of elevator of Star Mills, to which it had been sold, was delivered by the carrier, without authority, to the Galveston Wharf Company, at its elevator, subject to plaintiffs' order, and, before being unloaded, was destroyed by the great storm of September 8, 1900. Held, that by wrongful delivery the carrier became at once liable to the shipper for its value and was not relieved by its subsequent destruction by the "act of God."

Appeal from the District Court of McLennan. Tried below before Hon. Marshall Surratt.

Seley & Early sued the railway company and recovered judgment from which defendant appealed.

*T. S. Miller* and *Clark & Bolinger,* for appellant.

*John G. Winter* and *Davis & Cocke,* for appellees.

KEY, Associate Justice.—This is a suit to recover the value of certain grain, resulting in a judgment for the plaintiffs for $1160.15, and the defendant has appealed.

The trial court filed conclusions of fact, which are as follows: "I find that on August 30, 1900, plaintiffs delivered to defendant at Lorena, Texas, one car No. 2 bulk wheat, containing 814 1-3 bushels; on September 1, 1900, one car containing 995 bushels and 39 lbs., No. 2 bulk wheat; and on September 2, 1900, one car containing 601 bushels, 40 lbs. No. 2 bulk wheat for shipment to Galveston, Texas, consigned, as shown by bills of lading and way bills for each car, to 'shippers order, notify Seley & Early, Galveston, Texas, care Star Mills.' According to usage, this meant and was understood by both plaintiff and defendant as a direction by plaintiff to defendant to deliver said wheat to the Texas Star Flour Mills, known as and commonly called 'Star Mills' at its elevator in Galveston. The wheat arrived in Galveston on September 4 and 5, 1900, but defendant did not notify plaintiffs or the Star Mills of its arrival in Galveston, and they had no knowledge thereof, but it did notify and on the 6th and 7th of September deliver same to Galveston Wharf Company at its elevator A, an entirely different concern to the Star Mills, and the elevators of the two were located some considerable distance apart. This delivery was for account of plaintiff, and the wharf company accepted and held the grain subject to plaintiffs' order. At this time, the value of this wheat in Galveston was 70½ cents per bushel, and the freight thereon to defendant was 9 cents per bushel. The Galveston Wharf Company had not unloaded the cars on September 8th, and they were at that time

standing on its switch track and were there desstroyed by an unprecedented storm which swept over the island on that day. The bills of lading contained among other things an exception as to its liability from loss by act of God. Had the defendant promptly notified the Star Mills of the arrival of the wheat, the evidence shows that it would in all probability have been unloaded to the Star Mills elevator before the storm and not been lost, but if it had not been unloaded and the cars containing it had been delivered before the storm to the Star Mills by defendant on the switch tracks used by the Star Mills for cars shipped to it, as was the custom of defendant, the wheat would not have been destroyed by the storm, as the water was not of sufficient depth on those tracks to have entered the cars. The wheat in these cars had been sold by plaintiff to the Star Mills subject to its inspection, but defendant had no knowledge of that fact, and plaintiff had been shipping other cars of wheat prior to those shipments over defendant's line, consigned to their own orders, care the Galveston Wharf Company, and this shipment was delivered to the wharf company through mistake of defendant's agent at Galveston. Defendant had made mistakes of this character before in handling grain for other parties, and such mistakes had theretofore been rectified by defendant by delivering a like quantity and grade of wheat, which had been shipped to the wharf company to the Star Mills, and defendant's said agent testified that this mistake would have been likewise corrected had the wheat not been destroyed by the storm, and I find that such would have been the case. At the time these cars arrived in Galveston, there were a great number of cars of wheat, some 300 consigned to the Star Mills, standing on the switch track, controlled by defendant, of the arrival of which the Star Mills had been notified, and it could not receive and unload them, because that part of its elevator devoted to storing grain for its customers was full; and defendant's said agent thought that its entire elevator was full, but as a fact, a part of its elevator which it had reserved for storing wheat bought by it, was not full, and if it had been notified of the arrival of this wheat, it would have received and unloaded it into its elevator. After the storm a part of this wheat was found and unloaded into the wharf company's elevator and sold by it and plaintiffs received on the —— day of ———, 1901, out of the proceeds thereof, the sum of $441.82."

*Opinion.*—The testimony supports the foregoing findings of fact, and they are adopted by this court. We also approve and adopt the trial judge's conclusion of law, announced in the following language:

"The defendant had delivered the grain to the Galveston Wharf Company in violation of its contract of shipment before the storm, and thereby, in my opinion, converted it, and immediately, upon such wrongful delivery, became liable to plaintiff for the value thereof. The cause of action for the value of the grain having arisen before its destruction, defendant can not excuse itself by showing a subsequent destruction, for which it would not have been liable, had it not parted with the possession.

"It is true that the delivery to the Galveston Wharf Company was for account of plaintiffs, and the grain was held by it subject to their orders, but such delivery was made without plaintiffs' knowledge or consent, and in direct violation of its contract of shipment, and in my opinion constituted a technical conversion.

"It could not thus force upon plaintiffs business relations with others in regard to this shipment of grain, without plaintiffs' knowledge or consent, and in violation of its contract with plaintiffs. The case might perhaps be different if the wheat had been delivered to the wharf company, subject to defendant's order, for in that event plaintiffs would not have been forced to look to others with whom they had not contracted, and defendant might have been in position to reclaim possession of the identical grain, and deliver same according to its contract, being responsible only for damages, if any, caused by the delay. Even this seems doubtful, but such is not the case here. The grain was not delivered to the wharf company subject to the defendant's order, but to plaintiffs, and defendant thereby lost control over it entirely, and in my judgment became immediately liable to plaintiffs for its value."

No error has been pointed out, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.