PATTERSON & ROBERTS v. QUANAH, A.
& P. RY. CO. et al.  (No. 1142.)

(Court of Civil Appeals of Texas.  Amarillo.
March 28, 1917.  Rehearing Denied
June 13, 1917.)

1. CARRIERS ☞90—CONVERSION—WRONGFUL
DELIVERY TO CONSIGNEES.
  If a shipment be under a shipper's order
bill of lading, it is a conversion by carrier to
turn the car over to the consignees before pay-
ment of the draft.
  [Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 331–337.]

2. CARRIERS ☞94(3)—SALE OF GOODS—LIA-
BILITY.
  A verdict for defendant, in action by shipper
against carrier for conversion, should not be
permitted, it appearing it sold the goods under
the statute as to perishable property, and, after
demurrage and advertising charges, has a bal-
ance belonging to plaintiff.
  [Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 378–385.]

3. CARRIERS ☞177(2)—INJURY TO SHIPMENT
—THROUGH BILL OF LADING.
  Shipment having been on a through bill of
lading, each of the carriers is responsible for
damages to the goods in transit.
  [Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 776, 777.]

4. CARRIERS ☞89—SALE OF PERISHABLE
GOODS—CONVERSION.
  If goods shipped be perishable, which is a
question of fact, and be sold by the carrier in
conformity with the statute as to perishable
goods, it would not be liable for conversion be-
cause thereof, if it tendered the balance of pro-
ceeds of sale, after deduction for demurrage and
advertising charges.
  [Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 324–330.]

5. CARRIERS ☞89—SALE OF PERISHABLE
GOODS—CONVERSION.
  Sale by the carrier of a shipment of goods
as perishable, without complying with the stat-
ute, requiring notice by advertising for five
days, would be a conversion.
  [Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 324–330.]

6. CARRIERS ☞135—INJURY TO SHIPMENT—
RIGHT OF RECOVERY.
  Where injury to goods in transit does not
render them worthless, the shipper refusing to
accept them, while not entitled to recover their
value, may recover for the injury.
  [Ed. Note.—For other cases, see Carriers,
Cent. Dig. §§ 557–559, 599–602, 603½–604½.]

7. TRIAL ☞359(1)—SUBMISSION ON SPECIAL
ISSUES—GENERAL VERDICT.
  A case being submitted on special issues,
the court should not accept a general verdict
not responsive thereto.
  [Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 857–860, 875, 878.]

8. TRIAL ☞141—SUBMISSION TO JURY.
  Facts admitted in pleadings need not be
submitted to the jury.
  [Ed. Note.—For other cases, see Trial, Cent.
Dig. § 336.]

9. EVIDENCE ☞543(4)—OPINIONS—QUALIFI-
CATION.
  A witness is qualified to testify to market
value of maize at a certain place, there being no
denial of his testimony that he had shipped

much maize there, and was acquainted with
market value there.
  [Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 2358.]

10. EVIDENCE ☞130—LETTERS.
  Letters exchanged between defendants are
not admissible against plaintiff, they not being
attached to a deposition, nor the facts stated
therein sworn to by any witness.
  [Ed. Note.—For other cases, see Evidence,
Cent. Dig. § 403.]

11. EVIDENCE ☞471(24)—OPINIONS.
  Testimony of witnesses, not shown to be ex-
perts, that in their opinion maize, claimed to
have been injured in cars, was ruined by being
rained on while in the field on the ground, is
nothing more than a guess, and inadmissible.

  Appeal from Cottle County Court; W. O.
Jones, Judge.

  Action by Patterson & Roberts against the
Quanah, Acme & Pacific Railway Company
and others.  Judgment for defendants, and
plaintiffs appeal.  Reversed and remanded.

  Bell & Bell, of Paducah, for appellants.
D. E. Decker and J. A. Clarke, both of
Quanah, and Hawkins & Sneed and J. M.
Whatley, all of Paducah, for appellees.

  HALL, J.  Appellants sued the Quanah,
Acme & Pacific Railway Company, the Den-
ver City Railway Company, Houston & Texas
Central Railway Company, St. Louis, Browns-
ville & Mexico Railway Company, and Frank
Adams, its receiver, Missouri, Kansas &
Texas Railway Company, and Harris Bros.
Grain Company, for the sum of $304.50, the
alleged value of a shipment of maize from
Paducah, Tex., to Heyser, Tex.  The peti-
tion alleges that the shipment was damaged
in transit by reason of a defective car, which
permitted the rain to leak through and dam-
age the contents, and, while the pleading
is not faultless, it is sufficiently clear, as
against a general demurrer, to permit a
recovery in the alternative for conversion.
Plaintiffs were entitled to recover either
upon proof of conversion or upon proof of
the facts alleging negligence in furnishing
a leaky car.  We understand from the record
that the shipment was made on a through bill
of lading which was attached to a draft
drawn upon Harris Bros. Grain Company at
McKinney.  When the shipment reached des-
tination, and its damaged condition was
ascertained, the draft and bill of lading were
returned to plaintiffs unpaid.  The shipment
seems to have been transferred from one car
to another somewhere en route, but when
and by whom the transfer was made does not
appear from the record.  During the progress
of the trial appellants took a nonsuit as to
Harris Bros.; but it appears from the state-
ment of facts that upon their request, when
the car had reached its original destination,
it was reconsigned to Tivoli.  Whether this
could be construed as an acceptance of the
car and an exercise of dominion over it by

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Harris Bros., the record is not full enough for us to determine.

[1] If the shipment was made under a shipper's order bill of lading, the act of the railroad company in turning the car over to the consignees before payment of the draft would be a conversion by the carrier. M., K. & T. Ry. Co. of Texas v. Seley, 31 Tex. Civ. App. 158, 72 S. W: 89; T. & G. Ry. Co. v. First Nat'l Bank of Carthage, 47 Tex. Civ. App. 283, 112 S. W. 589.

[2] The maize was advertised for sale under the statute permitting railway companies to sell perishable commodities, and it appears that, after paying the demurrage and advertising expenses, there is a balance of $59.32 still in the hands of the auditor of the delivering carrier. It was shown by two witnesses that the maize was delivered to the initial carrier in good condition, and several witnesses testified that it reached Heyser in a badly damaged condition, and, notwithstanding these facts. there was a general verdict by the jury for the defendants. Upon what theory the court permitted the jury to return a verdict in favor of the defendants, when it is shown that one of them has $59.-32 in its hands belonging to plaintiffs, we are unable to state; but that is such a palpable error as will require a reversal of the judgment, even without consideration of the several assignments presented in the brief.

[3] Having been shipped upon a through bill of lading, each of the carriers is responsible for the damages to the maize in transit, under articles 731, 732, and 1830, Vernon's Sayles' Civ. St. Elder, etc., Co. v. St. Louis, etc., Ry. Co., 105 Tex. 628, 154 S. W. 975; Galveston, etc., Railway Co. v. Jones, 104 Tex. 92, 134 S. W. 328; Williams v. Gulf, etc., Ry. Co., 135 S. W. 390; S. A. & A. P. Ry. Co. v. Jackson & Allen, 187 S. W. 488; St. L. S. W. Ry. Co. v. Hughston Gr. Co., 186 S. W. 429.

[4, 5] In its present condition the record is sufficient to show that probably the maize could be classed as perishable freight at the time of its sale, though the admissible evidence on that issue is meager. Of course if it can be termed perishable, which was a question of fact, the carriers would not be liable for conversion, because of sale, had they tendered the sum of $59.32 remaining in their hands as proceeds of the sale, though they may still be liable for the damages in transit. Whether or not the freight was advertised for fully five days before the sale we are not able to tell from the record. If it was sold without complying with the statute, such sale would constitute a conversion. Carter & Corey v. I. & G. N. Ry. Co., 93 S. W. 681; M., K. & T. Ry. v. Rines & Co., 37 Tex. Civ. App. 618, 84 S. W. 1093.

[6] The court submitted the case to the jury upon the following general charge requested by the defendants:

"Gentlemen of the Jury: At the request of the defendant railway companies you are instructed as to the law in this case as follows: That if the car of maize in controversy, when it arrived at its final destination, was not wholly worthless, the plaintiff or consignee was charged with the duty of receiving the same, and of using reasonable efforts to obtain the market value for the shipment in its damaged condition; and if you believe from the evidence that the plaintiff and the consignee refused to accept said shipment, if the same was not wholly worthless, then you are charged that the plaintiff cannot recover in this case, and you should return a verdict in favor of the said defendant."

This charge is certainly not the law applicable to this case. See St. L. S. W. Ry. v. Burrus Mill & E. Co., 168 S. W. 1028, and authorities cited.

[7, 8] The jury did not answer any of the special issues, but, it seems, returned a verdict based upon the above-quoted charge. While some of the special issues submitted are immaterial, the most of them present proper issues, and the court should have required the jury to answer them, or else state that they could not agree; but it appears that no effort whatever was made to answer any of them. The general verdict, as returned, was not responsive. When a case is submitted upon special issues, the court should not accept a general verdict. If the shipment was made upon a through bill of lading, issues 1, 2, 3, 4, and 5 were immaterial inquiries so far as the rights of plaintiffs were concerned, but may have been relevant to the liability of the carriers inter se. Issue No. 6, as to the value of the maize at the time delivered, and issue No. 7, as to its value and condition upon its arrival at Tivoli, were material. That part of issue No. 8, with reference to whether or not the maize was sold at Tivoli, was immaterial because the defendants' answers admitted its sale, and facts admitted in pleadings need not be submitted to the jury. The ninth issue is not stated in the brief, but the tenth was material. There is a second set of interrogatories appearing in the record. None of them have been answered.

[9] We think that the witness Patterson was qualified to testify as to the market value of the maize at destination. He stated he had shipped a great deal of maize to that section of the country, and that he was acquainted with the market value in that locality. This evidence not being denied, he should have been permitted to testify.

[10] It appears that a number of letters, written by agents and officials of some of the defendants, to the agents and officials of other defendants, were introduced as evidence against the plaintiffs. The letters were not attached to any deposition, the facts stated therein were not sworn to by any witness, and plaintiffs could not be bound by any of the declarations contained in them. Emerson v. Mills, 83 Tex. 385, 18 S. W. 805; Edwards v. Osman, 84 Tex. 656, 19 S. W. 868; M. K. & T. Ry. Co. v. Want & Co., 179

S. W. 903. All this testimony should have been excluded upon plaintiffs' objection, or else its effect limited to the several defendants.

[11] The testimony of several witnesses who testified by deposition was admitted, who gave it as their opinion that the maize was ruined by being rained upon while it was in the fields, and before the heads were picked up from off the ground. This is purely the expression of an opinion from witnesses who were not shown to be experts, and, at the best, could be nothing more than a guess. Appellants' objections to this testimony should have been sustained.

The judgment is reversed, and the cause remanded.