### GULF, C. & S. F. RY. CO. v. BUCKHOLTS STATE BANK. (No. 6700.) *

(Court of Civil Appeals of Texas. Austin. Dec. 12, 1923. Rehearing Denied Jan. 16, 1924.)

**1. Carriers ⚬⚬83—Liable for value of goods wrongfully delivered without surrender of original order bill of lading.**

Where a carrier transported cotton under a shipper's order bill of lading which provided for notice to shipper and another of its arrival at destination and delivered it to a compress company without giving such notice and without requiring production and surrender of the order bill of lading, it was guilty of a conversion of the cotton and liable for its value to the true owner.

**2. Carriers ⚬⚬83—Liable in trover for value of cotton upon delivery of tickets symbolic of title without bill of lading.**

Where a carrier transporting cotton under a shipper's order notify bill of lading delivered the same to a compress company and caused such company to issue to the person to be notified its tickets, which represented the constructive title and right of possession to such cotton, without requiring him to produce and surrender the order bill of lading covering the shipment, it was liable in an action of trover for the value of the cotton.

**3. Carriers ⚬⚬83—Direction in order bill of lading to notify third person of arrival of shipment not an authorization to deliver to such person.**

Where a shipper's order bill of lading provides that a third person shall be notified of the arrival of the cotton at destination, the carrier is not authorized to deliver to such person without production and surrender of the bill of lading, and, if it does so, it constitutes a technical conversion for which carrier becomes immediately liable.

**4. Carriers ⚬⚬83—Not·relieved of liability for misdelivery under order bill of lading upon obtaining repossession of the goods unless owner notified of such fact.**

Where a carrier transporting cotton under a shipper's order bill of lading wrongfully delivered it to a compress company and delivered the compress receipts to a third person, who was to be notified, it was not relieved of liability for conversion of the cotton upon obtaining re-

possession of the receipts, until it notified the owner that it had recovered possession and would deliver the cotton upon demand and surrender to it, of the bill of lading in view of Rev. St. art. 720.

**5. Carriers ⚬⚬91—Rule as to storing cotton at destination inapplicable where conversion occurs.**

The doctrine that a carrier is not guilty of conversion, when in the exercise of a sound discretion it stores cotton at destination in other than its own warehouse, is applicable only where the carrier has performed the duty required of it by Rev. St. arts. 711 and 712, 'to notify the consignee of the arrival of the shipment and to allow him a· reasonable time to remove it, and has no application where the carrier has converted the property by a delivery to a compress company and delivery of the compress receipts to a person not entitled thereto.

**6. Appeal and error ⚬⚬692(I)—Bill of exceptions not showing what testimony would have been or its materiality shows no error.**

An assignment of error on the wrongful exclusion of testimony fails to show error, where the bill of exceptions presenting it does not show what the·testimony sought to be introduced would have been, or its materiality.

**7. Carriers ⚬⚬94(4)—Measure of damages for conversion of goods by carrier.**

In an action against a carrier for the.conversion of goods, the measure of damages is the value of the goods at the time of the conversion, and a provision in the bill of lading fixing the damages for loss or injury does not apply.

**8. Carriers ⚬⚬158(I)—Provision as to measure of damages in bill of lading by carrier is· void.**

A limitation in a bill of lading fixing the damages for loss or injury to property while in the possession of carrier at their value at time and place of shipment is void, as contravening Rev. St. art. 716 (h), and public policy, and may not be enforced by either party.

**9. Contracts ⚬⚬138(I)—Contract void because of public policy unenforceable by any party thereto.**

A contract which is void because of being in contravention of public policy is unenforceable by any party thereto.

Appeal from District Court, Milam County; Prentice Oltorf, Judge.

Action by the Buckholts State Bank against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, Chambers, Wallace & Gillis, of Cameron, and F. J. & C. T. Duff, of Beaumont, for appellant.

W. A. Morrison and Roy Baskin, both of Cameron, for appellees Buckholts State Bank and C. A. Pitts & Co.

BLAIR, J. 'Appellee, Buckholts State Bank, as purchaser of an order bill of lad-

---

⚬⚬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted March, 5, 1924.

ing evidencing a shipment of 42 bales of cotton, sued appellant railway company for its value, alleging a misdelivery or conversion. The alleged conversion was based upon two grounds: First, that appellant railway company converted the cotton by delivering it to the Cameron Compress Company, upon its arrival at Cameron, Tex., without having first notified C. A. Pitts, at Cameron, Tex., the party named in the bill of lading to be notified in violation of its contract to do so, and in violation of its contract to deliver the cotton only upon the presentation and surrender of the order bill of lading under which the cotton was transported; and, second, that appellant converted the cotton by instructing the Cameron Compress Company to deliver its receipts for 37 bales of cotton to C. A. Pitts, of Cameron, Tex., without first notifying Pitts of the arrival of the cotton, and without requiring the said Pitts to present the order bill of lading under which the cotton was transported, in violation of appellant's contract to do so; and also converted the five remaining bales of cotton by directing the compress company to make tickets to W. E. Coley, the shipper, and to deliver the tickets so issued in the name of Coley to appellant. The value of the cotton was alleged to be 30 cents per pound at Buckholts and Cameron, Tex., on September 10th, the date of the shipment, which amount appellee alleged it was entitled to receive under the bill of lading, which provided that for any loss or damages to the cotton its value at the date and place of shipment would be paid. Appellee also alleged a refusal of appellant to deliver it the receipts which it obtained for the cotton.

The defendant in answer to the specific allegations of conversion, alleged that W. E. Coley, the owner and shipper, delivered it 42 bales of cotton at Buckholts, Tex., at the time alleged, with instructions to transport and deliver the same to the compress at Cameron, Tex., notify C. A. Pitts of its arrival at destination; and that in accordance with such instructions it placed the cotton on the platform of the Cameron Compress Company, as the agent of the shipper and every other holder of the order bill of lading, and notified C. A. Pitts of its arrival at Cameron, Tex.; that C. A. Pitts disclaimed any knowledge of the cotton and refused to receive the same; that neither the shipper nor any one holding under him ever demanded a delivery of the cotton nor ever presented the bill of lading therefor; that the cotton remained from the dates of delivery by appellant to Cameron Compress Company, in the possession of said Cameron Compress Company, until the 10th day of October, 1920, when a fire which destroyed the compress also destroyed the cotton in question; that having stored the cotton with a reliable concern, appellant's liability and relationship to said cotton had ceased as a common carrier, and that it was liable therefor only as a warehouseman at the time it was destroyed by fire; that if the delivery of the compress company's tickets to Pitts was conversion, appellant relieved itself from liability therefor by obtaining a return of the tickets from Pitts before the fire destroyed the cotton, and was ready, able, and willing to deliver the same to the shipper or any holder of the bill of lading demanding the same and surrendering bill.

Upon the uncontroverted facts and the special matters of fact found by the jury in answer to special issues, the court rendered judgment for appellee against appellant railway company for the value of the cotton at the time and place of its conversion. Appellee excepted to that portion of the trial court's judgment which held its measure of damages to be the value of the cotton at the time and place of the conversion; and by cross-assignments of error contends that its measure of damages was fixed by a provision in the bill of lading to be the value of the cotton at the time and place of shipment.

Appellant filed a motion for a new trial, which was overruled by the court, and to which ruling an exception was taken, notice of appeal given, and the appeal duly perfected.

### Findings of Fact.

The undisputed facts show that on the 10th day of September, 1920, W. E. Coley, as owner of 42 bales of cotton, delivered them to appellant railway company, at Buckholts, Tex., for transportation to Cameron, Tex., a distance of about 10 miles. Appellant accepted the cotton and issued its order bill of lading which contained the following provision as to notice of arrival at destination: "Consigned to shipper's order notify Cameron, Texas. Notify C. A. Pitts, Cameron, Texas." This order bill of lading was indorsed in blank by Coley to appellee, on the day following its issuance, for a valuable consideration, and it remained in appellee's possession from that time until the trial, when it was introduced in evidence. Appellant transported the cotton to Cameron, Tex., and without notifying C. A. Pitts or W. E. Coley, the shipper, of its arrival, and without the authority or consent of Pitts or W. E. Coley, and without requiring the production and surrender of the bill of lading, delivered it in three separate lots on September 13, 14, and 16, 1920, to the Cameron Compress Company, at Cameron, Tex. Appellant's agents thereafter instructed the compress company to issue its separate ticket or receipt for each bale of cotton, and to deliver C. A. Pitts the tickets representing 37 bales of cotton, and to issue tickets for the 5 remaining bales to W. E. Coley, and deliver those issued to Coley to appellant. C. A. Pitts

knew nothing of the shipment, or of the instructions given the compress company by appellant concerning the 37 tickets, and became aware of it the first time at a later date, when he found the tickets mixed with others furnished him, which represented cotton that he had stored at the compress. Pitts never claimed the cotton, nor ever had in his possession the bill of lading under which it was shipped. Upon request, Pitts turned over to appellant the tickets for the 37 bales of cotton either a few days before or a few days after the cotton was destroyed by fire. Appellant was informed by C. A. Pitts at the time it regained possession of the compress tickets that the Buckholts Bank held the bill of lading. Appellant, after regaining the possession of all of the compress tickets, which represented constructive or symbolic title and right of possession to the 42 bales of cotton, did not notify appellee or Coley, the shipper, that it had them and was ready to deliver them upon a surrender of the bill of lading. Appellant did not notify appellee or Coley, the shipper, that it had placed the cotton with the Cameron Compress Company for storage at any time. Appellant did not notify Coley, the shipper, of the arrival of the 42 bales of cotton at destination, and that it held it subject to its order, after C. A. Pitts disclaimed any interest in it and refused to accept it. On the 10th of October, 1920, the Cameron Compress Company was destroyed by fire, and the 42 bales of cotton covered by this shipment were totally destroyed by said fire. It was agreed by the parties that on the 10th day of September, 1920, the cotton was of the value of 30 cents per pound at Buckholts and Cameron, Tex.; that on September 13th, 14th, and 16th, respectively, it was worth 28, 27¾, and 28 cents per pound at Buckholts and Cameron, Tex.; and that the aggregate weight of the 42 bales of cotton was 23,073 pounds.

The jury found that Coley knew before the fire that the cotton had been delivered to the compress and the receipts to Pitts, but that Coley did not agree that Pitts should hold the compress receipts, and that Coley had no authority to act as agent of the appellee bank after the delivery of the bill of lading to appellee.

## Opinion.

We are of the opinion that the judgment of the trial court under the undisputed facts and the findings of fact by the jury is correct. Appellant, under the facts as proved, was liable for a misdelivery or conversion of the cotton. On the question of a misdelivery or conversion, the evidence discloses that appellant delivered the cotton in question to the Cameron Compress Company, without notifying either the shipper or C. A. Pitts of its arrival at destination, in violation of its

contract to do so, and without requiring the compress company to produce and surrender the order bill of lading under which said cotton was shipped; and by reason of such wrongful delivery converted it, and became immediately liable to the true owner for its value in conversion. The following is from the testimony of appellant's agent who handled the cotton at destination:

"When the cotton came down from Buckholts, I had what is called a waybill. I never had a copy of the bill of lading sent to me from Buckholts. The waybill showed the cotton shipped 'shipper's order notify C. A. Pitts.' I knew it was shipper's order shipment. I delivered the cotton over to the compress with instructions to them to put it in the name of C. A. Pitts. I knew it had been placed there in the name of Pitts. I went to Pitts on several occasions to collect the freight. Next to the last time I called on Mr. Pitts, he told me he had the tickets, but the first time the tickets were not mentioned. Mr. Pitts gave me the tickets about four or five days before the fire, the 37 tickets, and he never had the other tickets. * * * That is correct, when some cotton came from Buckholts from W. E. Coley in September, 1920, it came in two or three shipments and was placed at the compress by the railroad, and we never got the bill of lading. I went to see Mr. Pitts about it before the fire, and he told me he had not bought the cotton, and didn't pay the freight. * * * This cotton was sent over to the compress; it never stopped at the depot. The next thing that was done was to issue the manifest to the compress, telling them whose cotton it was and whose name to put it in. I never did tell the compress myself to put five bales of it in the name of Coley. I guess the compress went by the manifest, I don't know. It is not necessarily a fact that we put five bales in Coley's name because the freight had not been paid; they didn't know whether the freight had been paid or not; they had nothing to do with collecting the freight. I knew the cotton had been delivered to the compress, but I never tried to get the cotton back from the compress; that is correct. I had no order to that effect; that is correct. * * * That 'notify C. A. Pitts' on the bill of lading meant that upon arrival of the cotton that we were to notify C. A. Pitts & Co. that his cotton had arrived; that that particular shipment of cotton had arrived. He then could get the cotton under condition he had the bill of lading. The first time anything was said between Mr. Pitts and I about the tickets, he said that he did not have them, but said he would get them for me, because I wanted to make delivery of the cotton, and in case I drew a draft on Buckholts for the freight I would have to have the bill of lading and attach also the tickets to the freight bill."

[1] This transaction was tantamount to an attempted final delivery of the cotton by appellant without any notice being given, as required by the bill of lading, as to the arrival of the cotton, and without requiring the production and surrender of the bill of lading under which the cotton was shipped. It is not, nor could it be, contended by ap-

pellant that this delivery to the compress was for the purpose of storing the cotton with it as appellant's agent, to be later delivered to the rightful owner upon demand, and we are not authorized to so treat the transaction. It is clearly evident that appellant intended to forever end the transaction, so far as it was concerned, upon its delivery to the compress. It is true that a little later it did obtain a delivery to it of five tickets issued in the name of Coley, representing a like number of bales of cotton, which no doubt would relieve it of the conversion already committed had proper notice of the regaining of possession been given.

It is the well-settled law that where a carrier, transporting cotton under a shipper's order bill of lading, which provides for notice to shipper and another of its arrival at destination, delivers it to a third person without giving such notice, and without requiring a production and surrender of the order bill of lading, it is guilty of a conversion of the cotton, and immediately becomes liable for its value to the true owner. It is also well-settled law that where a shipment is made under an order bill of lading, it is notice to the carrier that the shipper intends to retain in his power the ultimate disposition of the cotton shipped, and a delivery of the same to a third person, without the knowledge and consent of the shipper, and without a surrender of the bill of lading, constitutes a technical conversion even though the carrier had performed its duty as to notice of the arrival to another named in the bill to be notified, but who disclaimed any knowledge of the shipment, and refused to accept it; for upon such disclaimer of knowledge and refusal to act on the part of the person to be notified, it then became the duty of the carrier to notify the shipper of such fact. Article 720, Revised Statutes; 10 C. J. p. 259, §§ 371, 372, notes and case; Ry. Co. v. Seley, 31 Tex. Civ. App. 158, 72 S. W. 89; Hines v. Jordan (Tex. Civ. App.) 228 S. W. 638; North Pennsylvania Ry. Co. v. Commercial Natl. Bank of Chicago, 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287; Railroad Co. v. Heidenheimer, 82 Tex. 195, 17 S. W. 608, 27 Am. St. Rep. 861; Georgia Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948; Hubbell, Slack & Co. v. Farmers' Union Cotton Co. (Tex. Civ. App.) 196 S. W. 681; Banking Co. v. Landa (Tex. Civ. App.) 33 S. W. 681; Ry. Co. v. French, 254 U. S. 538, 41 Sup. Ct. 195, 65 L. Ed. 391.

[2] Appellant was liable in an action in trover for the value of the 37 bales of cotton when it caused the compress company to issue and deliver to C. A. Pitts, the person named in the order bill of lading to be notified of the arrival of the cotton at destination, its compress tickets which represented the constructive or symbolic title and right of possession to said 37 bales of cotton, without requiring him to produce and surrender the order bill of lading covering the shipment.

[3] Where a shipper's order bill of lading provides that a third person shall be notified of the arrival of the cotton at destination, the carrier is not authorized to treat the person to be notified as a consignee, and a delivery to such person without the production and surrender of the bill of lading constitutes technical conversion, for which the carrier becomes immediately liable, upon such wrongful delivery, for the value of the cotton. A direction of this character in the bill of lading does not authorize the carrier to presume that the person to be notified is the consignee, but notifies the carrier not to deliver the goods to him as the shipper retains the power to direct the final disposition of the goods at destination.

[4] Admitting that appellant obtained possession of the compress receipts or tickets, which it had wrongfully delivered to C. A. Pitts, before the cotton burned, it would not be relieved of its liability for a conversion of the cotton, as contended by appellant in its first proposition of law, until it had notified the consignor or true owner of the cotton, if it knew who the true owner was, that it had recovered the possession of the cotton wrongfully delivered, and would deliver same upon demand and surrender to it of the bill of lading. No such notice was given, although Pitts had refused the cotton and had informed appellant that the Buckholts Bank held the bill of lading, and although appellant knew that it had given no notice of the arrival of the cotton and of Pitts' refusal to accept it to the shipper, as it had contracted to do. Same authorities as cited above.

[5] Appellant's second proposition, which contends that where a carrier, in the exercise of a sound discretion in storing the cotton at destination at a point other than its own depot or warehouse, does not thereby become guilty of a conversion of the cotton, is not applicable to this case. The exercise of a sound discretion by a carrier in the selection of a storage place for freight until called for by the owner is only applicable to instances where the carrier is authorized to store freight, and such defense is not available where the fact show a conversion of the property.

It is true that the undisputed testimony and admissions by appellant show it liable as a common carrier for the value of the cotton destroyed by fire while in its possession, and had appellee predicated its right of recovery upon such liability, then the rule contended for by appellant by this proposition might apply, provided appellant had performed the duty required of it by the provisions of articles 711 and 712, Revised Stat-

utes, relative to notice of the arrival of the cotton at destination, and allowing consignee or the owner a reasonable time to remove it. M. Pac. Ry. Co. v. Haynes, 72 Tex. 182, 10 S. W. 398. No such notice was given, and the only actual notice the shipper had of the arrival of the cotton at destination was that it had been delivered to the Cameron Compress, and the tickets evidencing the title thereto had been delivered to C. A. Pitts, the party to be notified of its arrival, which facts informed the shipper that the cotton had been converted. The admission by appellant that subsequent to the wrongful delivery of the cotton by it, and before its destruction by fire, it had regained possession of the cotton and could have delivered it on demand, would not relieve it of the conversion and avails appellant nothing, in absence of notice to the shipper, or true owner, if it knew the true owner, that it had so regained possession of the cotton, and stood ready, able, and willing to deliver same upon demand and a surrender of the bill of lading. This notice was not given, and appellee had the right to treat the transaction as conversion, and to recover the measure of damages in accordance with such cases. On this measure of damages the trial court rendered the judgment herein appealed from, which we find is supported by the evidence.

[6] Appellant's fifth proposition is not considered because of the failure of the bill of exception presenting it to show what the testimony sought to be introduced would have been, or its materiality; and therefore fails to show error. Dunham v. Forbes, 25 Tex. 23; Moss v. Cameron, 66 Tex. 412, 1 S. W. 177; Brothers v. Mundell, 60 Tex. 242; Orr. v. Ferrell, 68 Tex. 638, 5 S. W. 490; Holstein v. Adams, 72 Tex. 490, 10 S. W. 560; Fox v. Brady, 1 Tex. Civ. App. 590, 20 S. W. 1024; Chimine v. Baker, 32 Tex. Civ. App. 520, 75 S. W. 330.

In view of our findings of fact and our holding as to the law in this case, appellant's remaining propositions become immaterial, either because they are not supported by the facts, or not applicable to the question of law involved, and we overrule them without writing thereon.

[7-9] Appellee's cross-assignments of error, complaining that the court erred in not allowing it to recover the value of the cotton at the time and place of shipment, as such was the measure of damages stipulated in the bill of lading under which the cotton was transported, are not sustained: First, because a provision in a bill of lading fixing damages for loss or injury to the property while in the possession of a carrier, as such, for transportation, is not applicable where the suit is for a conversion of the property, for in such suits the value of the property at the time and place of conversion constitutes the measure of damages recoverable. Second, because a stipulation in a bill of lading that the carrier will be liable for the value of the goods at the time and place of shipment, in case of loss or damage, is void in that such provision may have the effect of limiting or avoiding its liability as a carrier, and therefore in contravention of article 716, (h), Revised Statutes, and of public policy. Appellee contends that although the contract is void as to enforcement by the carrier, yet if it undertakes to make such an agreement and if it is not unreasonable, the shipper may enforce it. To announce such a rule would authorize one party to a contract which is void because in contravention of public policy to enforce it, and deny the right to the other party. A contract which is void because of being in contravention of public policy is unenforceable by any party thereto. To announce such a rule would be to allow one party to the contract the right to enforce the remedy provided therein for its breach, and deny such right to the other party, which would be tantamount to enforcing a unilateral contract.

We find no error in the judgment, and it is affirmed.

Affirmed.