**GULF, C. & S. F. RY. CO. v. BUCKHOLTS STATE BANK et al.   (No. 621–4127.)**

(Commission of Appeals of Texas, Section A. April 8, 1925.)

**1. Carriers ⬤═⊃93—Railroad's delivery of cotton at compress held not conversion.**

Words "compress at Cameron," typewritten below signature of railroad's agent to bill of lading, *held* part of contract for shipment of cotton to Cameron, so that railroad's placing thereof at such compress on arrival, pursuant to general custom, was not conversion, rendering it liable for destruction of cotton by fire before presentation of bill of lading by plaintiff.

**2. Trover and conversion ⬤═⊃1—"Conversion" defined.**

Any distinct act of dominion, wrongfully exercised over one's property in denial of or inconsistent with his right, is a conversion (quoting Words and Phrases, Second Series, "Conversion").

**3. Carriers ⬤═⊃93—Loss of cotton after delivery at compress held not attributable to conversion by railroad.**

Loss of cotton by fire after delivery at compress, as authorized by bill of lading, *held* attributable to plaintiff's negligent failure to present bill for nearly month after arrival, and not to conversion by railroad.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Action by the Buckholts State Bank against the Gulf, Colorado & Santa Fé Railway Co., in which defendant filed cross-action against plaintiff and C. A. Pitts & Co. Judg-

ment for plaintiff against defendant, and for latter against plaintiff on cross-action, affirmed by Court of Civil Appeals (258 S. W. 491), and defendant brings error. Judgments reversed, and cause remanded to district court.

Chambers, Wallace & Gillis, of Cameron, Terry, Cavin & Mills, of Galveston, and F. J. & C. T. Duff, of Beaumont, for plaintiff in error.

Roy Baskin and W. A. Morrison, both of Cameron, for defendants in error.

BISHOP, J. The Buckholts State Bank, defendant in error, instituted this suit in the district court of Milam county against plaintiff in error, Gulf, Colorado & Santa Fé Railway Company, alleging that it was the holder · and owner of a statutory order bill of lading under which, on the 10th day of September, 1920, the railway company undertook to convey and deliver 42 bales of cotton from Buckholts, Tex., a distance of 10 miles, to Cameron, Tex., and that said railway company converted said cotton, causing it a loss for which it sought damages. It alleged that the railway company converted the cotton by delivering it to the Cameron Compress Company upon its arrival at Cameron in violation of the terms of the contract of shipment. It also alleged that, having delivered the cotton to the compress company, it converted same by instructing the compress company to deliver its receipts for 37 bales of the cotton to C. A. Pitts, of Cameron, Tex., who, under the terms of the bill of lading, was to be notified of the arrival of the cotton at the point of destination, without requiring him to present the order bill of lading, and by directing that the tickets to the remaining 5 bales of cotton be made out in the name of W. E. Coley, the consignor of the cotton, and delivered to the agent of the railway company.

The railway company answered by general denial, and by special answer alleged that, on September 10, 1920, there was delivered to it by W. E. Coley 42 bales of cotton which was consigned to shipper's order at Cameron, Tex., with instructions to it to deliver same to the compress at Cameron, and to notify C. A. Pitts when said cotton arrived at Cameron; that, on arrival, it placed the cotton on the platform of the Cameron Compress Company, which was the only compress at that place, and notified C. A. Pitts of its arrival; that Pitts refused to receive the cotton; that same remained at the compress until October 10, 1920, when it was destroyed by fire; that neither the shipper nor any one holding under him prior to the fire demanded its possession; that, until the cotton was destroyed by fire, it was in a position to and was ready, able, and willing to deliver said cotton to the lawful owner of same on proper demand and surrender of the bill of lading, but that no demand was made for the delivery of said cotton; and that, if such demand had been made, the possession of the cotton could and would have been delivered to said bank.

By way of cross-action, the railway company sought to recover the amount due for the freight charges on said shipment. It also sought judgment against C. A. Pitts & Co., a firm composed of C. A. Pitts and D. H. Slaughter, in case it should be determined that the cotton had been by it converted by delivery of the cotton tickets to C. A. Pitts.

On trial in the district court judgment was rendered in favor of defendant in error bank against the railway company for $7,-245.71 in favor of said railway company against the bank on its cross-action for freight charges in the sum of $68.54 and that plaintiff in error railway company take nothing against C. A. Pitts & Co.. This judgment was by the Court of Civil Appeals affirmed. 258 S. W. 491.

W. E. Coley, on September 10, 1920, shipped the 42 bales of cotton from Buckholts, a distance of 10 miles, to Cameron, Tex., over the railroad of plaintiff in error, consigned to his order with direction to notify C. A. Pitts at Cameron, Tex. Coley was a cotton buyer at Buckholts. Defendant in error bank had loaned him the money with which to purchase this cotton, and, to secure his indebtedness to the bank, he, on September 11, 1920, indorsed in blank this bill of lading and delivered it to the bank. The cotton was transported in 3 separate lots on September 13, 14, and 16 and on arrival at Cameron was unloaded at the compress of the Cameron Compress Company; this being the only compress located at Cameron. On instruction by the agent of the railway company, the compress company issued its separate ticket for each bale of cotton and delivered to C. A. Pitts tickets representing 37 bales of the cotton and to the agent of the railway company the tickets representing the other 5 bales. Pitts had not purchased this cotton and, when the tickets were delivered to him, he separated them from the tickets representing other bales of cotton which he owned and placed them in a separate drawer. He never claimed the cotton and at all times was willing to deliver the tickets to any one holding the bill of lading. There is no evidence to indicate that either Coley or defendant in error bank could not have obtained possession of the tickets and the cotton by delivering to the agent of the railway company the bill of lading at any time after the cotton was unloaded at the compress and the tickets issued until it was burned October 10, 1920. Within a short while after the cotton was unloaded the agent called on Pitts and requested the bill of lading, and was told by Pitts that he had not purchased the cotton, was not claiming it, and did not have the bill of lading.

Neither Coley nor the bank prior to the time of the fire ever called on the railway company or presented to it the bill of lading or made any effort to get possession of the cotton. It was the general custom to unload and place at the compress cotton shipped to Cameron over the Gulf, Colorado & Santa Fé Railway either under an open or order bill of lading.

[1] On the trial the defendant in error bank introduced in evidence part only of the bill of lading, and plaintiff in error offered in evidence that part being the words "compress at Cameron," which was by the court excluded on the objection by the bank that these words were typewritten below the signature of the agent of the railway company. By order of the trial court the original bill of lading has been sent up with the transcript, and, from an inspection of it, we are of the opinion that these words are part of the contract of shipment and should not have been excluded by the trial court on the objection urged. Had the court admitted in evidence this part of the bill of lading, the words "compress at Cameron" should have been construed as an agreement that, on arrival of the cotton at Cameron, same should be unloaded at the compress in view of the uncontradicted evidence that it was the general custom to unload cotton shipped at the compress. M., K. & T. Ry. Co. v. Seley, 31 Tex. Civ. App. 158, 72 S. W. 89.

Placing the cotton at the compress was then a compliance with and not a violation of the terms of the bill of lading, and could not be said to be a conversion on the part of the railway company.

[2] When the cotton arrived and was unloaded at the compress, the agent of the railway company instructed the compress company to deliver to Pitts the tickets to 37 bales of the cotton and this was done. These tickets or receipts provided that the legal holder thereof was entitled to the possession of the cotton on presentation of the tickets. This instruction, of course, should not have been given. But, under the evidence in this case, was the compliance with this instruction by the compress company a conversion of the 37 bales of cotton?

"Any distinct act of dominion wrongfully exerted over another's property, in denial of his right or inconsistent with it, is a 'conversion.' * * * In order to constitute an actual conversion of goods, there must be some repudiation of the owner's right, or some exercise of dominion over them inconsistent with such right, or some act done which has the effect of destroying or changing the quality of the chattel. Kitchen v. Schuster, 89 P. 261, 264, 14 N. M. 164 (quoting Woodside v. Adams, 40 N. J. Law, 417). * * * Defendant's exercise of acts of ownership or dominion over plaintiff's property does not constitute 'conversion' if it is not inconsistent with plaintiff's right or title, or if plaintiff consents or acquiesces therein. Sigel-Campion Live Stock Co. v. Holly, 101 P. 68, 72, 44 Colo. 582. Any distinct act of dominion wrongfully exercised over one's property in denial of his right or inconsistent with it is a 'conversion.' * * * The test is whether the wrongdoer has exercised a dominion over the property in exclusion or in defiance of the plaintiff's rights." 1 Words and Phrases, Second Series, p. 1030.

[3] Though the cotton was placed and remained until it was consumed by fire at the place where under the contract of shipment it should have been, Pitts, by reason of his possession of the tickets, had it within his power to take actual possession of the 37 bales of the cotton. When the tickets were delivered to him, he noted on the back of one of them that they were the Coley 37 bales in order that he might keep the tickets separated from other tickets to cotton which he owned, and that the cotton might not get shipped out or mixed with his cotton. He placed the tickets in a separate drawer. He made no claim to the cotton and was at all times willing to deliver the tickets to the one holding the bill of lading. There is also evidence which is not contradicted that, soon after he received the tickets, he told those in charge of the cotton at the compress that it was not his cotton and requested them to separate these 37 bales from his. The evidence shows that, had the bank called for the cotton at any time before it burned and presented the bill of lading, as it was its duty to do delivery would have been promptly made. There is nothing in the evidence to indicate that Pitts' possession of these tickets was in denial of, or was inconsistent with, the bank's right to the possession of the cotton, and there was therefore no conversion by reason of his possession. We have carefully read all the evidence contained in the statement of facts, and have reached the conclusion that, had the judge of the trial court admitted in evidence that part of the bill of lading that permitted the placing of the cotton at the compress at Cameron, it, together with all other evidence, would have required that he instruct a verdict in favor of plaintiff in error. The loss sustained by the bank was attributable to its neglect in not presenting the bill of lading from the time of the arrival of the cotton on September 16, to October 10, when it was burned, and obtaining possession thereof and having same either removed or insured, and not to any conversion on the part of the railway company.

We recommend that the judgment of both the district court and the Court of Civil Appeals be reversed, and the cause remanded to the district court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.