ADA OIL COMPANY, Appellant,

v.

James W. LOGAN, Appellee.

No. 189.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Sept. 17, 1969.

Ernest C. Hurst, John H. Caldwell, Caldwell & Hurst, Houston, for appellant.

Ed J. Harris, Harris, Martin & Carmona, Galveston, for appellee.

BARRON, Justice.

This is an action for damages for alleged wrongful cancellation of a service station lease and for the alleged conversion of certain equipment and property belonging to plaintiff, James W. Logan. Suit was filed by Logan against Ada Oil Company. The appeal is by Ada Oil Company, defendant, and the parties will be referred to as they were in the trial court.

The trial court, without the intervention of a jury, rendered judgment for the plaintiff against defendant for $5,075. Appeal has been duly perfected by Ada Oil Company.

On April 1, 1964, plaintiff and defendant entered into a lease agreement covering

certain service station premises owned by defendant and situated in Galveston, Texas, such lease being for a period of one year and from month to month thereafter. The lease provided for termination by either party upon the giving of five days notice in writing to the other party of his or its intention to cancel the lease, or for termination automatically without notice if lessee plaintiff failed timely to pay when due any sum becoming due to lessor defendant under the terms of the lease. The lease was written on a standard form of defendant and was designated a lease and consignment agreement whereby certain gasoline, tires and batteries were consigned by defendant to plaintiff for sale in the service station. Plaintiff went into possession of the leased premises under such agreement and remained in possession until January 15, 1965, at which time the defendant cancelled, or attempted to cancel, the lease without notice by reason of nonpayment of gasoline consignments dated January 4, 1965 and January 11, 1965. Plaintiff had purchased the equipment of his predecessor lessee for $3,044 in 1964. Gasoline consigned to plaintiff was paid for weekly, and plaintiff paid in cash for all gasoline delivered through December 28, 1964.

On January 15, 1965, Mr. Bays, defendant's representative, came into the station with other persons and told Mr. Logan that they had come to close him out. They proceeded to take inventory of plaintiff's stock and just "took the station over." Logan stated that he was wholly surprised at such action, and that he had no notice whatsoever of such action or proposed action. Logan testified that he previously had been assured by Mr. Bays, defendant's agent who had dealt with plaintiff on most occasions on behalf of Ada, that prompt payment was not necessary, and he told plaintiff not to worry about the gasoline, because plaintiff's loan application with Ada would come through most any time. Bays had told plaintiff that the representative in charge of the loan application was out of town at the time, but that just as soon as he returned plaintiff's loan would be approved.

Plaintiff stated that he had been to the bank several times to get money to pay his gasoline consignments, and that he had made application in December of 1964 for the loan to help him through the winter months. Logan told Bays on January 15 that he would go to the bank and get the money for the gasoline as he had done before, but he was told by one of the men representing Ada that such action would be of no help to him, that they were going to close plaintiff out anyhow and that the money would not be accepted. The testimony shows that Logan could have paid for the gasoline by obtaining the money from a local bank, and such fact was confirmed by John Saracco, a bank official in charge of Logan's accounts, who stated that he would have loaned him the necessary money to pay Ada.

Plaintiff further testified that he was present at all times while the inventory of his equipment was being taken by Mr. Bays; that he could not recall Mr. Bays placing a value on each item as he inventoried it but that he did remember, in the back of his mind, Mr. Bays asking him if the price of each item was a fair price and that he did not recall whether he agreed to the prices as he was asked by Mr. Bays but that it was possible that he did agree. Plaintiff, in effect, stated that he was overwhelmed by the action of Ada in checking him out of the station, and that he was confused and did not know what to do after proposed payment had been refused. Most of plaintiff's equipment was purchased by Mr. Atkinson, the incoming dealer who had been approved as the new lessee of the station.

On April 15, 1964, plaintiff executed a chattel mortgage to Ada Oil Company for an indebtedness of $5,571 which covered a 30′ x 30′ (13′ high) corrugated iron steel frame building which plaintiff was constructing on the premises, together with various items of personalty and equipment. While there is some suggestion that the chattel mortgage was to be released as soon as plaintiff's fidelity bond was made, apparently to help secure gasoline, tire and bat-

tery consignments, we think the record shows that the chattel mortgage was executed to secure a $2,000 Ada guaranteed bank loan representing money borrowed by plaintiff to construct the building above, as well as gasoline, tire and battery consignments. The chattel mortgage described no note, but an indebtedness in the above amount was shown in the mortgage. While the testimony shows that the values placed on each item of property and equipment listed in the chattel mortgage on April 15, 1964 were arrived at by people in the marketing department of Ada Oil Company, there is no testimony or practically no evidence tending to show the reasonable market value of such property on January 15, 1965. Plaintiff in substance testified that he had compared the respective dollar figures appearing opposite the respective items of equipment listed in the chattel mortgage with the respective values fixed for the same items of equipment on the inventory made on close-out on January 15, 1965, and had arrived at a net difference of $812.90, and that he felt that he could have *gotten* five or six hundred dollars more for such equipment had he had an opportunity to find his own buyer. With respect to his claim for damages for the partially completed building which plaintiff constructed on the leased premises, the plaintiff testified that he *spent* approximately $2,000 for materials in constructing such building and that he, with some help, furnished the labor on the building. Plaintiff stated that his labor was worth approximately $1,500. Mr. John Saracco testified that he felt the plaintiff's service station would be worth at least $10,000 *to him*, and that he would say that the equipment and building at the service station would be worth in the neighborhood of $3,000 or $4,000.

Additionally, defendant held possession of a certificate of title to plaintiff's truck by reason of a claimed indebtedness to defendant under the bank loan of a balance of $162.39. Plaintiff stated that he could not successfully sell the truck by reason of the wrongful withholding of his certificate of title by defendant, and that his truck had depreciated in value in the sum of $550.00. Plaintiff denied the indebtedness of $162.39 above and claimed wrongful retention of the truck by defendant.

Ada Oil Company, apparently being in doubt concerning its legal position in removing Logan from the station on January 15, 1965, or in order to attempt to make its position certain, on February 5, 1965, sent two letters to plaintiff by certified mail. One letter dated February 5, 1965 advised plaintiff that defendant intended to cancel its lease agreement under Section 2A of the lease, requiring five days notice. The second letter, also dated February 5, 1965, notified plaintiff that Ada was foreclosing its chattel mortgage of April 15, 1964 at private sale to be held on February 10, 1965, to satisfy an indebtedness of $3,104.-40. Though both letters were dated February 5, one letter was mailed February 9, 1965 and the other letter was mailed on February 5, 1965. Plaintiff declined to bid at such sale, and the property and equipment included in the mortgage were bid in by Ada Oil Company for the sum of $3,-104.40, the amount of the claimed indebtedness owing by Mr. Logan to Ada Oil Company. It seems to be undisputed that plaintiff on January 15, 1965 was indebted to defendant for gasoline in the sum of $2,728.67 and also owed defendant the sum of $314.98 on tires and batteries. In addition, plaintiff was indebted to Ada in the sum of $1,660.00, less two credits aggregating $65.91, representing the unpaid balance of the $2,000 bank loan guaranteed by defendant.

The trial court in its conclusions of law found that defendant waived its right to terminate the lease involved by taking over the station without notice; that defendant's taking of possession was wrongful for failure to give notice to plaintiff, thereby depriving plaintiff of the opportunity to find his own buyer for his own equipment located on the premises. The court further held that such wrongful termination and foreclosure damaged plaintiff in the sum

of $2,500, which represents the difference between the amount allowed plaintiff in the forced settlement and the reasonable market value of plaintiff's equipment foreclosed on by defendant; and that defendant should have credited plaintiff with the full value of the metal building in the amount of $3,500, rather than the amount of $1,475, thereby damaging plaintiff in the sum of $2,025. Defendant was found to have wrongfully withheld title to plaintiff's 1957 three-fourth ton wrecker truck for more than three years to his damage in such particular of $550.

■ The plaintiff contends that the chattel mortgage above referred to is void and of no legal effect because there is no certain and enforceable debt involved and the mortgage specifies no terms of payment. We overrule such contention and hold that the chattel mortgage on this record is valid and enforceable according to its terms, the lawful balance due on the recited obligation of $5,571 being payable on demand. Art. 5932, Sec. 7, Vernon's Ann.Tex.Civ.St. And see 12 Tex.Jur.2d, Sec. 14, p. 24; Southwestern Drug Corp. v. First Nat. Bank, 45 S.W.2d 424, 426 (Tex.Civ.App.), writ ref. The evidence clearly shows that the plaintiff was indebted to the defendant in some amount on January 15, 1965, and at least a portion of the recited indebtedness was due and owing.

■ We believe the evidence is sufficient to support the trial court's conclusion that the defendant, through its agents, waived its right to terminate the lease and consignment agreement of April 1, 1964 under the automatic termination provision of the lease by reason of plaintiff's failure to pay for gasoline when payment was due, as defendant attempted to do on January 15, 1965. While there is evidence to support a contrary finding, the testimony of plaintiff to the effect that he had made application for a loan to make such payments and for the purpose of his operation of the service station during the winter months, his testimony that defendant's employee and agent assured him that he need not worry about timely payments for gasoline since the loan would take care of them, and that the loan would be approved in a short time, warrants the trial court's finding and conclusion. The question of waiver is one of fact for the trier of the facts. A waiver takes place where one dispenses with the performance of something which he has a right to demand, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right of his intention to rely upon it. The truth of the testimony and plaintiff's reliance upon such acts and statements testified to by him, were matters for decision of the trial court. We hold that his findings and conclusions were authorized. See Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865; 60 Tex. Jur.2d, Sec. 9–11, pp. 191–196. Defendants, therefore, on January 15, 1965, was guilty of conversion of plaintiff's property under the trial court's findings, and was liable to the plaintiff as a result thereof for any damages which were lawfully proven, since defendant gave no notice to Logan at that time of its intention to take possession and control of the leased premises and plaintiff's property. Gulf, C. & S. F. Ry. Co. v. Buckholts State Bank, 270 S.W. 1008, 1010 (Tex.Com.App.); Harnden v. McKinney, 103 S.W.2d 869 (Tex.Civ.App.), no writ hist.; Henderson v. Beggs, 207 S.W. 565 (Tex.Civ.App.), no writ hist.

The trial court, however, rendered judgment in favor of plaintiff only for the sum of $2,500 for the alleged conversion of plaintiff's equipment; for $2,025 for the alleged cost, after allowing appropriate credits, of a partially completed metal building constructed on the leased premises by plaintiff; and the sum of $550 for the alleged wrongful retention by defendant of the title to plaintiff's truck. No judgment was rendered for the plaintiff in connection with his asserted claim for damages arising

from the alleged wrongful cancellation of the lease or for plaintiff's assertion of overcharges on gasoline consignments.

Defendant contends that plaintiff failed to prove the fair and reasonable market value in Galveston County, Texas, on January 15, 1965 of the equipment and property allegedly converted by defendant; that the trial court applied an improper measure of damages, and that such market value is the only proper and applicable measure of damages to be applied in this case. In view of the record after a careful examination thereof, we are required to sustain such contentions, and we reverse and remand the judgment of the trial court for a new trial.

As we interpret the record, the plaintiff himself limited his claim for damages for his equipment in addition to that already allowed him by the defendant on the close-out to the sum of $812.90, as stated above. The methods used by plaintiff in arriving at that figure does not establish market value. There was no evidence that the dollar amounts set out in the chattel mortgage represented the reasonable market value in Galveston County, Texas, of the respective items of equipment to which they related at the date of the chattel mortgage, nor would the reasonable market value on April 15, 1964 establish such value on January 15, 1965 without further and supporting proof. In connection with the proof offered concerning the partially constructed building on the property (which property apparently belonged to Ada subject to plaintiff's rights), plaintiff attempted to show the cost to him of constructing the building and the value to him. We have carefully made a search of the record to find satisfactory evidence of reasonable market value in connection with the two items herein discussed, and we can find no such evidence or any inference which would support proper proof of market value to support the findings of the trial court in this regard. Plaintiff's testimony was cast in terms of "approximation" and "estimation" and was unsupported by any relevant factors leading

to his estimates, and his claim for labor was not documented by any measure by which it might be determined the basis used in arriving at his approximation of $1,500 for labor, nor was there any testimony in the record to show that such charges were fair and reasonable.

■ Under ordinary circumstances compensatory damages for a conversion are represented by reasonable market value at the place and time of conversion. Reef v. Hamblen, 47 S.W.2d 375, 376 (Tex.Civ. App.), writ ref.; 14 Tex.Jur.2d, Sec. 26 et seq., p. 30; 17 Tex.Jur.2d, Secs. 63, 64, pp. 139–140; Sec. 97, p. 168; DeShazo v. Wool Growers Central Storage Co., 139 Tex. 143, 162 S.W.2d 401, 404; Commercial Credit Corp. v. Flores, 345 S.W.2d 432 (Tex.Civ.App.), writ ref., n. r. e. There are, however, exceptions to the above rule, but none of the exceptions exist in this case. See Pasadena State Bank v. Isaac, 149 Tex. 47, 228 S.W.2d 127, 128; International-Great Northern R. Co. v. Casey, 46 S.W.2d 669 (Tex.Com.App.). There is no satisfactory evidence in the record to establish reasonable market value unless it can be said that it was proven in regard to plaintiff's truck. Under the peculiar facts of this case, we believe that the witnesses should be shown to be qualified to express an opinion as to reasonable market value, and if the witnesses are qualified and able to do so, reasonable market value should be proven, unless it is clearly shown that the property involved has no market value and other proper measures are resorted to. We hold that there is no evidence, or insufficient evidence, to show the reasonable market value at Galveston, Texas, on the above dates concerning plaintiff's equipment and the metal building constructed by him on the property in support of the judgment of the trial court.

■ In view of another trial we observe that defendant contends that when plaintiff was closed out on January 15, 1965, no legal tender of the past due gasoline accounts was made to defendant, and

that plaintiff agreed to the take-over and sale of the equipment to the new owner. But formal tender of payment is excused where the creditor has signified that he is unwilling to accept the money due as a discharge of the debt. Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065, 1068 (Tex.Com.App., op. adopted); Young v. Fitts, 138 Tex. 136, 157 S.W.2d 873, 877 (Tex.Com.App., op. adopted); 55 Tex. Jur.2d, Sec. 3, p. 213, and cases cited. Moreover, we believe that the circumstances under which defendant took possession of the service station authorized the trial court's implied decision that plaintiff did not agree to or concur in the forcible take-over and sale of his property to the new owner. Under the circumstances there was nothing he could do at that time to prevent it. The trial court had the right to so hold.

The rights of defendant under the terms of the chattel mortgage and defendant's right to take possession of the property thereunder have not been fully developed, if developed at all. Moreover, on another trial the validity of the mortgage may be at issue. On this record we have held that defendant was guilty of conversion on January 15, 1965. The question of mitigation, if any, or defendant's ultimate right, if any, to the premises and to seize and sell the property have not been fully developed or determined. The questions are difficult and complicated. Moreover, on another trial evidence should be developed concerning the nature of the partially constructed building on the property and its relation to possible damages, whether an original agreement was made by the parties concerning the building, whether it is removable without injury to the realty, or whether it is so attached to the realty as to be considered a part of it, in view of defendant's possible right to terminate the lease by the giving of five days notice.

For the reasons stated, the case is reversed and remanded to the trial court for a new trial.